[No. 33118.    Department One.    June 9, 1955.]

THE TOWN OF OTHELLO, *Respondent,* v. HARRY HARDER *et al.,*
*Appellants.*[1]

[1]Reported in 284 P. (2d) 1099.

*George H. Freese,* for appellants.

*Caw & Caw, Robert J. Caw, Blythe B. Caw, Burcham & Blair, Robert E. Blair,* and *Lewis H. Orland,* for respondent.

DONWORTH, J.—This is an eminent domain proceeding initiated by the town of Othello to condemn an easement, approximately one and one-half miles long, for an effluent pipe line and wasteway as an addition to its sewerage dis-posal system over and across 960 acres of farm land owned by appellants.

On December 14, 1953, the town council enacted ordinance No. 130, which reads, in part, as follows:

"AN ORDINANCE AUTHORIZING THE TOWN ATTORNEY TO IN-STITUTE AND CARRY OUT EMINENT DOMAIN PROCEEDINGS

"WHEREAS, the Town of Othello is constructing a Sewer System for the use and benefit of the people of the Town of Othello, and

"WHEREAS, it will be necessary to discharge effluent from said system, and

"WHEREAS, The Town Council is, and has been unable to reach an agreement with the property owners thereby af-fected, and

"WHEREAS, the said property is necessary to the proper operation of said sewer system,

"Now, THEREFORE, BE IT ORDAINED BY THE COUNCIL OF THE TOWN OF OTHELLO, AS FOLLOWS:

"The Town attorney is hereby authorized to institute and carry out eminent Domain Proceedings against the follow-ing described land situate in the County of Adams, State of Washington:

"*An easement Twenty feet in width* along the following described center line to construct and maintain a pipe line

and wasteway for effluent from the Othello Sewage Treatment Plant, described as follows: . . . [Description of center line omitted.]

"Payment for said property shall be made from legally available funds, and shall not be paid for by special assessment upon property benefited. . . ." (Italics ours.)

On April 5, 1954, the town, by its attorney, served and filed a petition for condemnation, which reads, in part, as follows:

"II. That the Town of Othello proposed to acquire land in the County of Adams, State of Washington, required for an addition to the sewage disposal system of said Town, and that, in order to acquire the land for such purposes, it is necessary for it to appropriate for public use the following described lands and premises situate in the County of Adams, State of Washington, namely:

"*A strip of land twenty (20) feet wide,* being ten (10) feet wide on each side of the following described center line: . . .

"III. That heretofore, on the 14th day of December, 1953, the Town Council of the Town of Othello, Washington, petitioner herein, passed Ordinance No. 130, entitled: An Ordinance Authorizing the Town Attorney to Institute and Carry Out Eminent Domain Proceedings . . .

"Wherefore, Your petitioner prays that the just compensation to be made for *the property hereinbefore described,* sought to be taken for the purposes specified in said ordinance and in this petition, be ascertained by a jury or by the Court should a jury be waived, and that, upon such compensation being paid to the defendants or paid into Court for their benefit, an order of this Court be entered that the said Town of Othello have the right at any time thereafter to take the property above described for the uses and purposes specified in said Ordinance and in this Petition." (Italics ours.)

At the hearing, upon being presented with stipulations to that effect by the parties, the court entered an order adjudicating that the use for which the easement was being acquired was a public use. The court then impaneled a jury, and the case proceeded to trial to determine the just compensation to which appellants were entitled by reason of the taking of this easement.

A consulting engineer, retained by the town to lay out this improvement, testified that along 540.7 feet of the proposed easement the effluent would be carried in a pipe line (buried three feet underground and thus below "farming level"), and that along the remainder of the easement the effluent would be carried in an open ditch. He testified that the pipe line and ditch were designed to accommodate a daily flow of five hundred thousand gallons of effluent from the town's sewage disposal plant. He computed the total area within the twenty-foot strip as being 3.7 acres.

The evidence is undisputed that the ditch, if constructed according to this plan, will divide the tracts of land owned by each appellant, making it necessary for them to install bridges at various points along the ditch in order to move farm equipment and machinery to and from the two parts of each farming unit. To eliminate this item of damage, and to show what the town would do in constructing and maintaining the wasteway portion of the easement, the mayor of the town of Othello was called as a witness.

Appellant objected to the admission of the testimony of the mayor, contending that, unless it was shown that the mayor had authority to bind the city, his testimony should not go to the jury. The objection was argued in the absence of the jury and finally was overruled by the court. The mayor then testified as follows:

"BY MR. CAW: Q. Mr. Wilson, will the town council improve the open ditch portion of the easement? A. They will. Q. On the channel part will they clear obstructions? A. They will that. Q. Will the water be kept free-flowing? A. Yes. Q. Will the city maintain the channel? A. Yes. Q. Will the town provide suitable crossings for the owners across the easement? A. Yes, they will. Q. How many crossings will they provide? A. Two or whatever the man — crossings he wants for his units. MR. CAW: I have no further questions. CROSS-EXAMINATION BY MR. FREESE: Q. Mr. Wilson, how long have you been Mayor of the town of Othello? A. Since June. Q. Of this year? A. Yes. Q. How long a term do you have? A. Four years. Q. And has the council taken any action on what they would do in connection with the sewer ditch? A. I think that when we started the disposal plant

we knew we had — Q. Just a minute, what action has the council taken? I will put it that way. A. We approved an ordinance. Q. What other action has the council taken to do these things? A. I think — I can't remember that. Q. Have they taken any action outside of passing Ordinance No. 130? A. I wouldn't know. Q. Then how can you tell what the council is going to do? A. Well, I think a person has — I have some power. Q. Just a minute, I am asking you how can you tell what the council is going to do in the future? THE COURT: You started to answer. You may answer. THE WITNESS: I can't answer it. BY MR. FREESE: Q. Then the only action the council has taken is passing Ordinance 130 which says condemning a piece of land 20-feet wide as set forth here? A. Yes. Does it say that we were going to maintain a flow? . . ."

The jury returned a verdict wherein it allowed three hundred seventy-five dollars as compensation for the land within the boundaries of the twenty-foot easement, being at the rate of one hundred dollars an acre. The jury did not allow any amount for severance damages or gross damages to the remainder of the property.

Thereafter, appellants moved for a new trial. The motion was denied. Judgment for three hundred seventy-five dollars compensation was entered in accordance with the verdict. The town paid the amount of the judgment into the office of the clerk of the court for the benefit of appellants and applied to the court for an order of appropriation. The order of appropriation, which was entered by the trial court, reads, in part, as follows:

"ORDERED, ADJUDGED AND DECREED That there be, and is hereby, appropriated to the Town of Othello, a municipal corporation, a perpetual easement across said property hereinafter described, and the right to the immediate possession thereof, the said property being described as follows:

"A strip of land Twenty (20) feet wide, being ten (10) feet wide on each side of the following described center line:

. . .

"Said easement shall be used for an effluent line and shall be channeled and the effluent kept free flowing, noxious weeds shall be controlled and three suitable crossings shall be provided at points to be designated by the respondants.

Respondants shall have free use of the effluent for their own purposes."

Appellants make three assignments of error on the part of the court: (1) in admitting the testimony of the mayor, (2) in denying the motion for a new trial, and (3) in entering (a) the judgment on the verdict, and (b) the order of appropriation.

■ A municipal corporation, being but a creature of the state, derives its existence, powers, and duties from the legislative body of the state. 37 Am. Jur. 620, § 4, and p. 626, § 7. 2 McQuillin, Municipal Corporations (3d ed.) 12, § 4.04; 578, § 10.03.

■■ Likewise, the officers of a municipality have only such powers and duties as are conferred upon them expressly or by necessary implication by the applicable statutes. It is the general rule, as stated in 37 Am. Jur. 662, § 46, that the powers delegated to a municipal corporation by the legislature are vested in the city or town council unless expressly delegated to some other officer or body. With these postulates in mind, we proceed to a consideration of the assignments of error.

The legislative provisions concerning municipal corporations of the fourth class (designated as towns) are codified in RCW in chapter 35.27. The government of a town is vested in certain elective and appointive officials. The elective officials consist of the mayor, the five members of the town council, and the treasurer. Among the many powers which the legislature has specifically vested in the town council are the following:

"The council of every town shall have power:

"(1) To pass ordinances not in conflict with the Constitution and laws of this state, or of the United States; . . .

"(17) To make all such ordinances, bylaws, rules, regulations and resolutions not inconsistent with the Constitution and laws of the state of Washington, as may be deemed expedient to maintain the peace, good government and welfare of the town and its trade, commerce and manufactures, and to do and perform any and all other acts and things necessary or proper to carry out the provisions of this title." RCW 35.27.370.

This section is immediately followed by RCW 35.27.380, reading as follows:

"Whenever it becomes necessary for a town to take or damage private property for the purpose of establishing, laying out, extending, and widening streets and other public highways and places within the town, or for the purpose of rights-of-way for drains, sewers, and aqueducts, and for the purpose of widening, straightening, or diverting the channels of streams and the improvement of waterfronts, and the council cannot agree with the owner thereof as to the price to be paid, the council may direct proceedings to be taken under the general laws of the state to procure the same."

The legislature has vested in the mayor of a town the following powers and duties:

"The mayor and in his absence a mayor pro tempore to be chosen by the council shall sign all warrants drawn on the treasurer and shall sign all written contracts entered into by the town. The mayor and mayor pro tempore may administer oaths and affirmations, and take affidavits and certify them. The mayor or mayor pro tempore shall sign all conveyances made by the town and all instruments which require the seal of the town.

"The authority of the mayor pro tempore shall continue only during the day on which he is chosen.

"The mayor is authorized to acknowledge the execution of all instruments executed by the town which require acknowledgment." RCW 35.27.160.

RCW 35.27.290, relating to the style of ordinances, provides in part:

"Every ordinance shall be signed by the mayor and attested by the clerk."

█ █ Our review of the applicable statutes convinces us that the mayor of a municipal corporation of the fourth class is clothed with no authority to speak for the town or the town council unless specifically authorized so to do by ordinance. The town council, acting in its legislative capacity, expresses its will in the form of "ordinances, bylaws, rules, regulations, and resolutions." *Hotel Cecil Co. v. Seattle*, 104 Wash. 460, 177 Pac. 347. No such enactment was offered in evidence in this case which empowered Mayor Wilson to

speak for the town council and bind the town with respect to any of the covenants that he attempted to make in his above quoted testimony concerning the improvement and maintenance of the wasteway on appellants' property and the building of suitable crossings over the easement for the land owners' use. It was error, therefore, to allow the mayor to so testify.

In answer to appellants' contention that the town must, under ordinance No. 130, acquire the twenty-foot strip in fee simple, respondent cites *Seattle v. Faussett*, 123 Wash. 613, 212 Pac. 1085, as holding that a municipality may condemn an easement where such an interest in the land satisfies its requirements. The cited case supports respondent's position as to the *quantum* of the estate which a municipality may acquire, but it also supports appellants' assignment of error that the mayor's testimony heretofore quoted was improperly admitted.

In order to understand the decision of this court in the *Faussett* case, it is necessary to consider the issues involved as disclosed by the record in that case. There the city of Seattle instituted a condemnation proceeding in Snohomish county for the purpose of acquiring a perpetual easement for an electric transmission system over a strip of land three hundred feet in width across some thirty-five hundred tracts of land, including Faussett's property.

The ordinance authorizing the institution of the condemnation proceeding, after referring to an existing electric plant and to a previously adopted plan and system ordinance providing for certain additions thereto and extensions thereof, specifically authorized and directed the corporation counsel as follows:

" 'Section 2. That the Corporation Counsel be, and he is hereby authorized and directed to initiate and prosecute the actions and proceedings, in the manner required by law, to purchase, condemn, take, damage and appropriate the lands and other property, property rights and privileges necessary to carry out the provisions of this ordinance.

" 'Section 3. That, in conducting said condemnation proceedings, and for the purpose of minimizing damages, the Corporation Counsel be, and he is hereby authorized to re-

serve to any owner the right to use the property hereby authorized to be condemned and appropriated, subject to the right of the city of Seattle to construct said transmission line thereon, together with the right of access and ingress thereto and egress therefrom, for the purpose of operating, maintaining and repairing the same; provided, however, that no such reservation shall be made which will interfere with the use of said property by the city of Seattle.' "

Pursuant to the quoted provisions of this ordinance, counsel for the city filed written stipulations defining with particularity the rights which the city was seeking to acquire in the property and those which were to be reserved to the land owner.

The trial court held that the city must condemn the strip of land within the three hundred foot right of way in fee simple, and submitted the case to the jury on that basis. From the judgment entered on the verdict, the city appealed.

In reversing the judgment and remanding the cause for a new trial, this court held that a city, in a condemnation proceeding, is not under a duty to take title to the property in fee simple, but may acquire such interest therein as serves its needs.

In commenting on the authority vested by the city in the corporation counsel, this court said, at page 622:

"Some contention is made in behalf of the defendant Faussett that the corporation counsel had no authority in the prosecution of the eminent domain proceeding to define and limit the estate or interest to be acquired by the city in the comtemplated right of way. We think such contention is not well grounded, in view of the authority given the corporation counsel by §§ 2 and 3 of the ordinance above quoted, authorizing the prosecution of the eminent domain proceeding. *It has been the common practice, recognized by the courts of this state and sanctioned by this court, to have the special interest or estate sought to be condemned defined by a statement or stipulation filed by counsel for the petitioner in the eminent domain proceeding.* [Citing cases.]

"It seems plain to us that the corporation counsel was fully authorized to file the notices and stipulations that he did, looking to the defining of the particular limited interest or estate to be acquired by the city. Apparently, in the passage of the ordinance authorizing the eminent domain pro-

ceedings, the city council felt unable to define with exactness each particular interest or estate the city should acquire, and so left the determination of that question in each particular instance to the determination of the corporation counsel to be decided by him, evidently in the light of the practical engineering and construction problems that would be involved in the construction of the city's plant." (Italics ours.)

See, also, *Seattle v. Seattle, Renton & S. R. Co.*, 83 Wash. 94, 145 Pac. 54, 1167.

■ Since in the present case the mayor of Othello had no statutory authority, nor (according to the record) any authorization provided by ordinance enacted by the town council, to bind the town by any promises as to what acts the town would perform in the future in the maintenance of the effluent wasteway or as to what rights the land owners could continue to enjoy in the right of way (as he attempted to do in his testimony), there was no legal basis for the limitations or obligations imposed on the town by the decree of appropriation.

■ Furthermore, these matters were not disclosed to the jury, except by the unauthorized statements of the mayor. It is the duty of a municipality, when seeking to condemn private property, to state very definitely in its ordinance and petition what property or property rights it is acquiring in the condemnation proceeding, and, in the case of an easement, what rights, if any, the land owner is retaining. As above pointed out, this must be done either by ordinance authorizing the proceeding or by the testimony of some person duly authorized by ordinance to bind the municipality or by written stipulation filed in open court pursuant to such authority. Both the court and the jury should be thus advised as to the scope of the proceeding.

■ It then becomes the function of the jury, under the evidence and instructions of the court, to fix the amount of just compensation for the property or property rights which are being taken or damaged by the municipal corporation.

Respondent argues that the mayor's testimony in regard to what the town would do in maintaining the easement was

received without objection being made by appellants. We do not so read the record. It appears to us that appellants' counsel clearly stated his objection based on the mayor's lack of authority to bind the town, that his objection was overruled, and that thereafter he did nothing which could be construed as a waiver of his objection.

From what we have said, it follows that the trial court erred in admitting the above-quoted testimony of the mayor. It was also error to insert the above-quoted provisions in the order of appropriation relating to the improvement and maintenance of the wasteway and the construction of crossings, because the town, under the circumstances herein described, was not bound by the mayor's unauthorized promises as to these matters.

Since appellants must be granted a new trial, one other matter might be mentioned. The mayor testified that the town council had passed an ordinance approving the plans and specifications for the sewerage treatment plant and the effluent line. He was unable to recall whether or not this ordinance was enacted prior to the passage of ordinance No. 130 (the condemnation ordinance). No such "plan or system ordinance" was offered in evidence. Hence, we are unable to determine whether there is a definite plan, adopted by the town council and on file in some town office, which would show this effluent line as a part of a system of sewerage treatment and disposal and specify the nature of the burdens and uses which the construction and operations of this effluent line will impose on appellants' property. It is customary, in such a case, for the condemnation ordinance to make some reference to the prior plan or system ordinance. *State ex rel. Dungan v. Superior Court, ante* p. 219, 279 P. (2d) 918.

If such an ordinance is produced upon a retrial of this case, the court will be able to ascertain whether the town is proceeding under RCW 35.27.380, RCW 35.67.020, or RCW 80.40.050. Once the authority to condemn is established, the procedure is to be found in RCW 8.12.010 *et seq.* See *State ex rel. Mower v. Superior Court*, 43 Wn. (2d) 123, 260

P. (2d) 355. All that we know from ordinance No. 130 is that the town is constructing a sewer system from which it will be necessary to discharge effluent, and that an *easement* twenty feet in width over appellants' land is necessary for the proper operation of the sewer system.

It follows that, because of the improper admission of the mayor's testimony, appellants' motion for a new trial should have been granted.

The judgment and order of appropriation are hereby reversed, with directions to grant appellants a new trial.

HAMLEY, C. J., SCHWELLENBACH, FINLEY, and ROSELLINI, JJ., concur.

