[No. 36575.   Department One.   July 25, 1963.]

THE STATE OF WASHINGTON, *on the Relation of Gabriel E. Smilanich, Appellant,* v. J. E. McCOLLUM *et al., Respondents,* S. H. EDINGER *et al., · Intervenor Respondents.**

*Reported in 384 P. (2d) 358.

*Cartano, Botzer & Chapman* and *Robert A. O'Neill,* for appellant.

*Guttormsen, Scholfield, Willits & Ager, E. Lloyd Meeds,* and *Robert E. Schillberg,* for intervenor and respondents.

WHITFIELD, J.†—This is an appeal from a judgment of the Superior Court of Snohomish County in a certiorari proceeding brought by Gabriel E. Smilanich (hereinafter referred to as the relator), against the Board of County Commissioners of Snohomish County (hereinafter referred to as the board), and the Planning Commission of Snohomish County (hereinafter referred to as the commission), the respondents, to review the action taken by the commission and the board in granting a conditional use permit to the intervenors, S. H. Edinger and Edinger Gravel Co., Inc. (hereinafter referred to as Edinger).

The conditional use permit was for the installation and operation of an asphalt batching plant on a tract owned by Edinger in southern Snohomish County. The relator sought to have the granting of the permit set aside. The relator owns an interest in and resides in a residence on a tract of approximately 3½ acres adjoining the Edinger property. The residence is approximately 600 feet from the asphalt plant of Edinger.

Prior to 1957, Snohomish County had no comprehensive plan of zoning. On or about April 15, 1957, the board adopted Zoning Resolution No. 7 as part of a comprehensive plan establishing zones in Snohomish County. District Zoning Map No. 4, showing the classifications and boundaries of the use districts (zones), was recommended by the commission by resolution dated July 14, 1958, and adopted by the board by resolution dated August 18, 1958. The area herein involved, including the properties of Edinger, the relator, and all surrounding properties, was zoned as "Sub-

†Judge Whitfield is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

urban Residential, 12,500-20,000 square feet." Zoning Resolution No. 7, as amended, hereafter will be referred to as the zoning code.

The Edinger property lies in a gravel bed in the floor of a valley and Edinger and others have operated gravel pits thereon for approximately 10 years. These gravel pit operations became nonconforming uses when the area was zoned suburban residential.

In July, 1958, Edinger purchased an asphalt batching plant and shortly after brought it to the site of the gravel operation. Edinger received a letter from the commission dated June 9, 1959, advising him that he would have to have a permit before he could operate his asphalt plant. In April, 1961, after he had built the foundation and some of the framework of the plant, Edinger applied to the commission for a conditional use permit for the installation and operation of the asphalt batching plant.

At the first hearing on the petition on May 8, 1961, the commission denied the conditional use permit; but upon a rehearing on June 12, 1961, the permit was granted. Upon an appeal by the relator and others to the board on July 17, 1961, the granting was approved. On October 6, 1961, upon certiorari proceedings before the Superior Court of Snohomish County, the action granting the conditional use permit was vacated and set aside for the reason that proper notice of the hearing of June 12, 1961, had not been given.

October 7, 1961, Edinger again applied for a conditional use permit for the asphalt batching plant, and on November 1, 1961, at a special hearing before the commission, a permit was granted. The relator and others protested to the granting of the conditional use permit and again appealed to the board, but after a hearing on December 8, 1961, the action of the commission was affirmed by the board.

December 11, 1961, this action was commenced in the Superior Court of Snohomish County to the end that the court should ". . . vacate, annul and set aside as void said unlawful issuance of the conditional use permit . . ." Trial of this cause was commenced February 9,

1962, and on February 14, 1962, the court announced its oral decision upholding the granting of the conditional use permit.

The relator has made 16 assignments of error on the part of the superior court. These assignments may be summarized as follows:

1. The amendment by the board to § 8(b) of the zoning code by the addition of the words "asphalt processing plants" constituted special legislation and is therefore unconstitutional.

2. The commission acted contrary to the zoning code when it granted the conditional use permit, for the reason that the record does not show that findings of fact, which would warrant such action, were made by the commission. Likewise, the record does not show any such findings made by the board.

3. A nonconforming use, such as was held by Edinger, may not be enlarged.

4. The commission did not have authority to grant the conditional use permit for the asphalt plant on the suburban residential zoned property.

(1) Relator contends that the action of the board in amending § 8(b) of the original zoning code in March, 1960, was contrary to Art. 1, § 12, of the Washington State Constitution, which provides:

"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

■ It is true that the protection afforded by this section of the state constitution and the equal protection and due process clauses of the United States Constitution applies to legislation enacted pursuant to the police power of the state. *Peterson v. Hagan,* 56 Wn. (2d) 48, 351 P. (2d) 127 (1960). The zoning ordinances are required to be uniform and equal in operation and effect. There must be a reasonable classification. *Zahn v. Board of Public Works of City of Los Angeles,* 195 Cal. 497, 234 Pac. 388 (1925). Ordi-

nances such as the one in the present case cannot be enacted merely because certain individuals desire them, and upon no other basis. *Kennedy v. City of Evanston,* 348 Ill. 426, 181 N. E. 312 (1932).

■ That this amendment to the zoning code was passed after a request therefor by Edinger is not questioned. However, the enlargement of operations for which a conditional use permit could be granted by adding the words "asphalt processing plants" extended the right to everyone, not to Edinger only, and to the whole zoning district, not to the particular zone involved.

" . . . It has been declared that in no doubtful case should the courts pronounce legislation to be contrary to the Constitution; that to doubt the constitutionality of a law is to resolve every or all doubt in favor of its validity; that all statutes are of constitutional validity unless they are shown to be invalid; and that the courts will resolve every reasonable doubt in favor of the validity of the enactment. . . ." 11 Am. Jur., Constitutional Law § 128, p. 780.

" . . . The same presumption of constitutional validity that attends an act of the legislature is equally applicable to municipal ordinances . . ." 11 Am. Jur., Constitutional Law § 128 note 20 (1963 Supp., p. 127).

■ (2) As to the absence of written findings of fact in the record, there is nothing in the zoning code which requires any findings of fact. The language of the section is as follows:

"SECTION 11. CONDITIONAL USE PERMIT.
" . . .

"C. ACTION BY PLANNING COMMISSION. In order to grant any conditional use permit the *findings* of the Planning Commission shall assure that the degree of compatibility made the purpose of this Resolution shall be maintained with respect to the particular use on the particular site and in consideration of other existing and potential uses within the general area in which such use is proposed to be located; also to recognize and compensate for variations and degree of technological processes and equipment as related to the factors of noise, fumes, vibration, odors, and hazards. The Planning Commission shall render its de-

cision within forty (40) days of receipt of application." (Italics ours.)

There is no requirement of a written document, and the word "findings" means nothing more than administrative determinations.

The case of *Lauterbach v. Centralia,* 49 Wn. (2d) 550, 304 P. (2d) 656 (1956), holds only that for an amendment to a zoning ordinance, in pursuance to RCW 35.63, to be valid, "the recommendation or concurrence" of the planning commission, as required by statute, must be present. An ordinance purporting to dispense with such recommendation or concurrence is void, as contrary to the statute. The case says nothing about findings of fact.

(3) That the operation of Edinger's property as a gravel pit was and is a nonconforming use under the zoning code is conceded by all parties. The use was established about 1951, prior to the adoption of the comprehensive plan. Accordingly, it became a nonconforming use upon the establishment of the suburban residential zoning in 1958. The zoning code provides in part:

"SECTION 9. NON CONFORMING USE.

"A. The lawful use of land or buildings existing at the time of adoption of this Resolution, although such use does not conform to the provisions thereof, may be continued but if such nonconforming use if [*sic*] discontinued for a period of one (1) year or more, any future use of said land or buildings shall be in conformity with the provisions of this Resolution.

"B. No nonconforming use of a *building* may be changed to another nonconforming use, only to that of a more restricted classification. . . ." (Italics ours.)

The general rule of law is that the purposes of zoning ordinances are served by phasing out nonconforming uses and that resolutions of boards of county commissioners and rules of planning commissions which refuse to enlarge nonconforming uses will be sustained by the courts. *Coleman v. Walla Walla,* 44 Wn. (2d) 296, 266 P. (2d) 1034 (1954). But there is nothing in this zoning code which prohibits the enlarging of a nonconforming use in which

there is no building involved, except such as provided in § 8(b), paragraph one, of the code, shown below.

(4) Did the commission have authority to grant the conditional use permit for the asphalt plant on the suburban residential zoned property?

The zoning code provides in part as follows:

"SECTION 8. GENERAL PROVISIONS.

" . . .

"B. EXCAVATIONS. Excavations, other than for normal building construction, of black soil, peat, sand, gravel or other natural deposits in an undeveloped area of any use district and bunkers and other equipment for the handling and removal from the premises of such deposits, and temporary equipment used to process such deposits from excavations on the site such as ready-mixed concrete plants, concrete products, gravel washing and crushing equipment, asphalt processing plants are a lawful use upon issuance of a Conditional Use Permit by the Planning Commission upon their findings that the following conditions have been met:

"1. The proposed excavation or temporary equipment will not be unduly detrimental to the existing, developing, or projected use of land in the surrounding area."

In other words, the commission does have the power to issue a conditional use permit for the operation of an asphalt processing plant, provided that the area in question is *undeveloped* and that the proposed *temporary* equipment *will not be unduly detrimental* to the existing, developing or projected use of land in the surrounding area.

These are questions of fact which have to be resolved by the authorities that administer the act.

In this case, the floor of the valley is used for extracting gravel and processing it. The valley is surrounded by residences varying in distance from these gravel pits, the closest being 200 yards distant. This gravel pit, and others, had been in operation for a great many years before the enactment of the zoning code.

In five different hearings, two by the commission, two by the board, and one by the Superior Court of Snohomish County, there were findings that this area was an "undeveloped" area.

That the nonconforming use of the area by the gravel processing and asphalt processing plants is detrimental to residences is unquestioned. Whether the use proposed would or would not be "unduly detrimental to the existing, developing or projected use of the land on the surrounding area" is likewise a matter to be passed upon by the commission and the board. The superior court stated:

". . . I can not find that under the circumstances existing here where this land and the neighboring land for so long has been used for that purpose that the detrimental effect is undue or any more than really minimal."

The determination as to whether the area was an "undeveloped area" and whether the "temporary equipment will not be unduly detrimental to the existing, developing or projected use of the land in the surrounding area" was a matter of discretion on the part of the commission and the board. This discretion was found by the Superior Court of Snohomish County not to have been used in an arbitrary or capricious manner, and a careful reading of the statement of facts does not negative this finding.

"It is well established that courts will not review, except for clear abuse, the discretion vested in public officers. *Metzger v. Quick,* 46 Wn. (2d) 477, 483, 282 P. (2d) 812 (1955), and cases cited. If the action of the board, in and of itself, was not arbitrary and capricious, it follows that this court will not interfere." *Lillions v. Gibbs,* 47 Wn. (2d) 629, 633, 289 P. (2d) 203 (1955).

We are convinced that the decision of the superior court is supported by the law and the evidence, and the judgment is affirmed.

OTT, C. J., ROSELLINI, HUNTER, and HAMILTON, JJ., concur.