[No. 385-2.    Division Two.    December 21, 1971.]

THE STATE OF WASHINGTON, on *the Relation* of *Josephine Morrison et al., Appellants,* v. THE CITY OF SEATTLE *et al., Respondents.*

*Roger M. Leed* (of *Schroeter, Jackson, Goldmark & Bender*), for appellants.

*A. L. Newbould* and *Gordon F. Crandall,* for respondent City of Seattle.

*Thomas L. Morrow* and *Delbert D. Miller* (of *Bogle, Gates, Dobrin, Wakefield & Long*), for respondent Safeway Stores, Incorporated.

*Charles H. Paul* (of *Helsell, Paul, Fetterman, Todd & Hokanson*), amicus curiae.

PEARSON, J.—Certain zoning actions taken by the Seattle City Council were unsuccessfully challenged in the superior court by writ of certiorari. From a denial of the writ, this appeal is taken. The individual appellants are residential property owners in the vicinity of the Broadway business district on Capitol Hill in Seattle. It is that area which is affected by the challenged zoning actions.

The appellant, Broadway Neighborhood Council, a corporation, apparently owns no property in the area affected. Its standing to seek judicial review has been challenged. However, because of our disposition of the appeal, we find it unnecessary to pass upon this question.

Safeway Stores, Inc., an intervenor in this action, seeks to build a new supermarket on roughly the north half of the block bounded on the west by Broadway, on the north by Mercer Street, and on the east by 10th Avenue. This market is to replace a smaller store which Safeway has conducted in the Broadway district for several years. When Safeway commenced its search for a suitable replacement site in 1968, it was faced with two general problems. The first was the fact that Broadway Street, one of Seattle's oldest business streets, is strip-zoned so that the commercial business zone extends only half a block on either side of Broadway. The second problem was that the blocks in this area are small and Safeway needed a sizeable area to accommodate a building containing 22,400 square feet, together with the parking area required under Seattle's comprehensive zoning ordinance No. 86300. Safeway engaged Henry Broderick, Inc., real estate brokers, to attempt land acquisitions in this vicinity, and as a consequence the brokers obtained purchase options on the above-described property, to be used as a principal-use site for the store. These options, however, were conditioned on having the east half of the block on the 10th Avenue side rezoned BC (commercial business) from its RM 800 (multiple residential) zoning. Such rezoning also required a change in the comprehensive plan for the Broadway district. A study made by the staff of the planning commission recommended a change in the comprehensive plan of the area to provide a greater area for the expansion of business in the Broadway district. Such change was officially adopted on May 31, 1969. On August 2, 1969, ordinance No. 97903 was finalized, which resulted in the necessary amended zoning classifications, to permit erection of the supermarket on the principal-use site, as described above. This zoning action was not challenged.

However, the land area in the principal-use site was inadequate to accommodate the large store building, as well as all of the required off-street parking, and for this reason

the broker, on behalf of Safeway, obtained purchase options on five lots located across 10th Avenue from the principal-use site. These lots were in an area zoned RM 800 and were not affected by the zoning change described above. The four lots on the northwest corner of the block immediately across 10th Avenue from the principal-use site were acquired first, and an application was filed by the broker as agent for Safeway,[1] seeking a conditional-use, off-street parking permit and variances which would permit these lots to be used as accessory parking for the principal-use site across 10th Avenue east.[2] These four lots are commonly known as 522-532 10th Avenue east. At a public hearing held on February 28, 1969, Safeway's applications were denied by the board of adjustment[3] by a three to two vote.

On appeal, the planning committee,[4] at a public hearing on April 9, 1969, recommended to the City Council that Safeway's appeal be granted and the applications allowed. On April 14, 1969, the City Council adopted the recommendation of its planning committee for both the conditional use and variance applications, and a permit was issued.

On May 5, 1969 Safeway's broker, Henry Broderick, Inc., filed conditional-use applications for accessory off-street

[1] The applications were later amended to include the property owners as well as Safeway.

[2] The conditional-use permit was sought under sections 12.42, 12.43, 23.42 and 23.43 of the comprehensive zoning ordinance of the City of Seattle No. 86300. The variance was sought under section 26.25, because one of the conditions for accessory parking in a residential zone was that the parking area must abut by at least 50 feet either directly or across an alley upon the lot of the principal use to which the parking area is accessory.

[3] The board of adjustment is a division of the planning commission, established by article 26 of the comprehensive zoning ordinance of the City of Seattle. It is empowered "to hear, decide, grant or deny applications for *conditional uses* . . . , applications for *variances* . . . ". Decisions of the board are declared to be final unless written notice of appeal is filed within 17 days following the hearing.

[4] Article 4, section 4, fifth, of Seattle City Charter provides: (The city council shall) "Have authority to create and use committees of its members to facilitate its legislative functions; Provided, That no committee of the council and no members shall have or exercise executive or administrative power, except as otherwise expressly provided in this charter."

parking on an additional lot, commonly known as 520 10th Avenue east, and immediately contiguous with the four lots previously described. This application was likewise denied by the board of adjustment, by a three to two vote. The city planning committee, on appeal, continued the hearing, inasmuch as the previous actions pertaining to the four lots had been challenged in superior court by certain property owners living near the proposed accessory parking area.

On August 18, 1969 the superior court ruled that the zoning action taken by the City Council with reference to the four lots was invalid because of inadequate notice of the hearing by its planning committee on April 9, 1969. Accordingly, on September 24, 1969 the planning committee of the City Council conducted another hearing, this time with proper notice, on the consolidated appeals by Safeway from the board of adjustment's denial of the application as to all five parcels of land extending from 520 to 532 10th Avenue east. On the same day, however, the planning committee, by a three to one vote, upheld the board of adjustment and recommended denial of the application. Five days later, the City Council as a whole voted to grant Safeway the conditional-use permits and variances as to all five lots. It is that action which is challenged in the superior court and is again challenged on appeal.

We might add that the options which Safeway had to purchase the property in the principal-use area, as well as the options on the five parcels of land for accessory-use parking became binding upon Safeway at the time the City Council favorably acted upon the applications. Consequently, deeds were delivered and the purchase price paid between August 2, 1969 and October 28, 1969 on the accessory parking lots. The present action was not commenced until November 17, 1969, and Safeway urges that the appeal should be dismissed because of laches on the part of appellants. We note that the trial court included a finding to the effect that the plaintiff, Josephine Morrison, and her counsel, who also represented other parties to the action, had knowledge of the plans of Safeway to purchase the

subject property and to the existence of options conditioned on the grant of authority to use the property as an accessory, off-street parking area.

The trial court did not, however, sustain the City Council's zoning actions because of laches, although in its oral decision the trial judge indicated that laches or estoppel was probably present because of the unreasonable delay in seeking court review.

Under Seattle's zoning ordinance, the board of adjustment is required to make certain findings and to issue a report with reasons for its decisions.[5]

In its written report denying Safeway's applications, the majority of the board of adjustment concluded that pedestrian-traffic conflicts would result from having the supermarket and a portion of the parking area separated by 10th Avenue east. The majority also concluded that there were practical uses of the property under the existing zoning.

The appellants challenge the zoning actions in several respects, which we will consider in order. First, does the

---

[5]With reference to conditional uses, the board is required to: (Article 26.22, Comprehensive Zoning Ordinance of the City of Seattle)

Consider the nature and condition of all adjacent *uses and structures,* and no such *conditional use* shall be authorized by the *Board* unless the *Board* finds that the authorizing of such *conditional use* will not be materially detrimental to the public welfare or injurious to property in the *zone* or vicinity in which the property is located, and that the authorization of such *conditional use* will be consistent with the spirit and purpose of this ordinance.

With reference to applications for variance, section 26.25 allows the board to authorize variances from the ordinance which will not be contrary to the public interest, and in allowing variances, the board must find that all the following facts and conditions exist:

(1) Exceptional or extraordinary circumstances or conditions applying to the subject property or to the intended *use* thereof that do not apply generally to other properties in the same *zone* or vicinity.

(2) Such *variance* is necessary for the preservation and enjoyment of a substantial property right of the appellant possessed by the owners of other properties in the same *zone* or vicinity.

(3) The authorization of such *variance* will not be materially detrimental to the public welfare or injurious to property in the vicinity or *zone* in which the property is located.

(4) The authorization of such *variance* will not adversely affect the comprehensive land use plan.

City Council, under its charter, have the power to hear appeals from the decisions of the board of adjustment? It is clear in this regard that the Seattle zoning ordinance does sanction an appeal to the Seattle City Council from the board of adjustment. However, appellants and a brief amicus curiae challenge the council's power to do so, contending that the Seattle City Charter prohibits the City Council from acting administratively—which it must do in passing upon conditional-use permits and variances. *Lund v. Tumwater*, 2 Wn. App. 750, 472 P.2d 550 (1970).

Appellants' argument is grounded upon the denial of executive or administrative power to council committees under article 4, section 4, fifth, of the Seattle City Charter, as set forth in footnote 4. It is also based on another provision of article 4, relating to finances and property. Section 14, third, provides: "Control of Finances and Property: [The City Council shall have power] to control the finances and property of the city; Provided, That the city council shall have no administrative as distinguished from the legislative power."

It is our view that these two prohibitions are restricted in scope to the specific matters to which they pertain and do not operate as a blanket prohibition from the exercise of any administrative or quasi-judicial power by the City Council.

A proviso in a specific clause in a statute is generally held to apply only to the clause in question, unless a clear legislative intent to the contrary is demonstrated. *See Bayha v. PUD 1*, 2 Wn.2d 85, 97 P.2d 614 (1939).

We see nowhere in the charter a prohibition of the council from establishing by ordinance a system of land use control in which the council reserves to itself the power to review administratively the actions of the agency which it creates. To the contrary, the general legislative power conferred by Seattle City Charter, article 4, section 15 is broad enough to encompass the zoning law (with its appellate procedure) enacted by the City Council:

*General Legislative Powers:* The city shall, in addition

to the powers enumerated in this charter, have all other powers now or hereafter granted to or exercised by municipal corporations of like character and degree, and also all powers now or hereafter granted to incorporated towns and cities, by the laws of this state, and may exercise the same by ordinance and not otherwise.

See Othello v. Harder, 46 Wn.2d 747, 284 P.2d 1099 (1955).

By ordinance 86300 the City Council has established land use control within its borders. The ordinance provides for ultimate council review of administrative actions of its board of adjustment. This is a common administrative power reserved to municipal legislative bodies. See Lund v. Tumwater, supra. See also, Chief Petroleum Corp. v. Walla Walla, 10 Wn.2d 297, 116 P.2d 560 (1941); Sharninghouse v. Bellingham, 4 Wn. App. 198, 480 P.2d 233 (1971).

It is our opinion that it would be unreasonable to hold that a council, acting legislatively, can create an agency to administer its zoning law (or even eliminate the agency), but at the same time to hold that the council is without authority to provide in the ordinance for council review of the agency's administrative actions. The council is ultimately responsible to the citizens of Seattle for the proper functioning of its zoning law. Denial of administrative power in this sensitive area would, in our judgment, seriously impair its ability to effectively carry out this responsibility. We seriously doubt that the two charter provisions referred to were intended to deny the council administrative power with reference to zoning matters when such power had been exercised for many years prior to the enactment of the present charter. This history is pointed out in the brief submitted by the City of Seattle and its accuracy is not challenged. Furthermore, there seems to be valid policy in the charter provision which prohibits administrative or executive powers to "committees" of the City Council, as well as in the area of finances and city property acquisitions.

■ It is also contended that the zoning actions of the City Council were illegal under the charter, because they

were accomplished by resolution rather than by ordinance. This contention is premised on article 4, section 7, which requires every "legislative" act of the city to be done by "ordinance." Having already concluded that the zoning actions in this case were *administrative* in nature and not *legislative,* we hold that charter provision and others pertaining to legislative action are not applicable.

There is no provision in the charter prohibiting the council from acting by resolution in nonlegislative matters. Granting permits which affect specific land uses does not, in our judgment, constitute a legislative act. Requiring an ordinance, in this type of case, would be burdensome and unreasonable. We agree with the rationale in *People ex rel. Sweitzer v. Chicago,* 363 Ill. 409, 2 N.E.2d 330, 104 A.L.R. 1335 (1936) where the court states at page 416: "Where the charter of a municipality is silent as to the mode in which the city council shall perform an act, the decision of the city council may be evidenced by either a resolution or an ordinance, and mere ministerial acts may be authorized by resolution." *See Ehrhardt v. Seattle,* 33 Wash. 664, 74 P. 827 (1903); *McGlothern v. Seattle,* 116 Wash. 331, 199 P. 457 (1921). We would add to that statement our view that ministerial or *administrative* actions which do not have a general legislative purpose may be done by resolution.

Amicus curiae argues that since Seattle is organized as a mayor-council form of government and since the electorate has rejected the council-manager form of government, the City Council can perform no administrative functions.

▇ Amicus curiae does not contend, however, that the state legislature, which must sanction the existence, powers and duties of municipal government (*see Othello v. Harder, supra*) has so separated the powers in cities with mayor-council type governments that the councils may not perform administrative functions. Accordingly, unless the charter expressly denies this function to the council or confers it exclusively on a specific official, we see no legal impediment to the council's exercise of administrative authority pursuant to its zoning law. As stated above, the

council is not specifically denied this power in the charter, nor is it specifically vested in the mayor or any other city official.

In *Othello v. Harder, supra* at 752, the Supreme Court stated: "It is the general rule . . . that the powers delegated to a municipal corporation by the legislature are vested in the city or town council unless expressly delegated to some other officer or body." It is our view that this rule disposes of the contention of amicus curiae.

Appellants' second major challenge requires a determination of whether or not the council failed to comply with the requirements of the zoning ordinance pertaining to granting conditional uses and variances. The principal thrust of this argument is threefold:

(1) The council itself held no public hearing.

(2) The council entered no written findings of fact.

(3) The council is bound by the findings of its board of adjustment.

■ It is axiomatic that a municipal corporation's legislative body, when acting in an administrative or quasi-judicial capacity, is obliged to comply with the laws which extend it such authority. *See Lund v. Tumwater, supra.*

■ It is our view that these contentions are without substantial merit. The planning committee of the City Council did hold a public hearing after proper notice and submitted its recommendations to the City Council as a whole. That committee made no decision. The testimony and exhibits entered at the committee hearing were availa-' ble to the council and we will not presume that the council members not on the committee failed in their duty to become informed on the issues raised at the hearing. Such hearing gave the protagonists an opportunity to be heard and present their evidence, and in our view complied with the substantive and procedural safeguards referred to in *Apostle v. Seattle,* 77 Wn.2d 59, 459 P.2d 792 (1969), and *Edwards v. City Council,* 3 Wn. App. 665, 479 P.2d 120 (1970).

In these days when massive urban problems must be met

by the governing bodies of our large metropolitan cities, delegation of the hearing function to examiners, boards or committees has become a useful and necessary practice in order to handle or expedite the handling of municipal business. It is our view that such practice here does not violate the public hearing requirements of the zoning law, since the ultimate decision rests with the City Council and not with its planning committee. *See In re Puget Sound Pilots Ass'n,* 63 Wn.2d 142, 385 P.2d 711 (1963).

It seems to us that due process of law with its concepts of a fair hearing does not require that such hearing be conducted by the entire body charged with making the determination, so long as that body has available to it the substance of the hearing. We uphold the procedure utilized by the Seattle City Council, as a practical necessity.

We now reach the question of whether or not the zoning law required the City Council to enter written findings of fact in its grant of the conditional-use permits and variances.

Sections 26.22 and 26.25 of the Seattle zoning ordinance prohibit grants of conditional-use permits or variances "unless the Board finds" certain facts and conditions to exist.

There is no requirement in the zoning code that the City Council must, on appeal, enter written findings of fact. We think the contention of appellants was effectively answered and disposed of in *State ex rel. Smilanich v. McCollum,* 62 Wn.2d 602, 384 P.2d 358 (1963) at 607: "There is no requirement [in the Snohomish County zoning code] of a written document, and the word 'findings' means nothing more than administrative determinations."

This principle is, in our opinion, fully applicable here. When the council acted to grant Safeway's applications, it determined that the "facts" necessary to the grant were present. The record itself is available to review whether or not such determination had a factual basis. Findings of fact on permits, license, and so forth would constitute an onerous burden upon already overburdened city councils.

■ The contention that the City Council is bound by the findings of its board of adjustment is also without merit. The requirement in the zoning ordinance that the City Council hold a public hearing on appeals from its board of adjustment (sections 26.21 and 26.35) is a clear indication that a de novo hearing upon the merits is contemplated. If the council were bound by the findings of the board of adjustment, there would be no point in requiring a public hearing. *See Anderson v. Pittenger,* 197 Cal. App. 2d 188, 17 Cal. Rptr. 54 (1961).

We turn next to the claim that the City Council acted arbitrarily and capriciously in granting Safeway the conditional-use permits and variances.

■ The trial court found as a fact that the decision of the City Council was not "arbitrary, capricious, fraudulent or made without consideration of the facts." We think its decision was correct. The scope of judicial review in this type of case is limited and where there is room for an honest difference of opinion concerning the advisability of the administrative action taken by the City Council, its determination must be sustained. *See State ex rel. Myhre v. Spokane,* 70 Wn.2d 207, 422 P.2d 790 (1967); *State ex rel. Kadow v. Board of Adjustment,* 77 Wn.2d 587, 464 P.2d 418 (1970).

There are cogent reasons for increasing the amount of off-street parking in this confined business area. Two business establishments had been allowed parking facilities in the RM 800 zone accessory to their business property in the near vicinity of Safeway's proposed site, and almost 500 residents of the area petitioned in favor of Safeway's application. The fact that the board of adjustment considered the traffic-pedestrian conflicts paramount in its denial of the application does not render the City Council's determination arbitrary and capricious. The City Council, of necessity, had other broader considerations in mind which were equally as cogent and which prevent us, as they did the trial court, from concluding that its action was arbitrary or capricious.

With reference to the variance which was necessary because of the 50-foot abutment requirement (see footnote 2) we think there were likewise cogent reasons in the record in support of the City Council's determination that the four requirements of section 26.25 (footnote 5) were met. These reasons are set forth persuasively in the intervenor's brief and it would unduly prolong this opinion to detail them here.

However, our review of the records, the exhibits, and the brief of intervenor convinces us that the City Council was fully justified in concluding that exceptional circumstances were present, caused by the limitations of the strip-zoned business district, which made the variance necessary in order to preserve the commercial land values and eliminate congestion in an important business district of Seattle.[6] We think also the variances and the conditional-use permits were well within the public interest and fully consonant with the public welfare and not unduly detrimental to other property with the restrictions and other requirements inherent in the grant of the variances. (Seattle City Charter, sections 26.25 (a) (3) and 23.43 (b))

We have considered the other technical errors raised by appellants, and conclude that they are without merit. The City Council's action does not constitute spot zoning (*see Smith v. Skagit County*, 75 Wn.2d 715, 453 P.2d 832 (1969)), and the technical error raised with reference to the fifth lot[7] was cured by Safeway's agreement to accept any code requirement pertaining to screening and to provide appropriate screening and landscaping for the accessory parking area.

The City Council made its determination and we cannot say that its action was arbitrary or capricious. We, likewise, are of the opinion that appellants' untimely application to

---

[6] One of the conditions to the grant of the applications was that Safeway was required to pay for the widening of 10th Avenue.

[7] Appellants contend that the application of Safeway with reference to 520 10th Avenue failed to refer to the screening provision of section 23.42(a)(2) and that consequently the entire action on its application was a nullity.

the superior court for a review of the council's action would have justified the trial court's denial of the writ of certiorari.

Judgment affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied February 8, 1972.

Review denied by Supreme Court April 24, 1972.