[No. 2456–2.   Division Two.   August 8, 1977.]

WEST SLOPE COMMUNITY COUNCIL, ET AL, *Appellants,*
v. THE CITY OF TACOMA, ET AL,
*Respondents.*

*Herbert Gelman* and *Gelman & Couture*, for appellants.

*William J. Barker* and *Thomas L. Fishburne*, for respondents.

REED, J.—West Slope Community Council (West Slope), an *ad hoc* citizens' committee, appeals from a superior court decision upholding the Tacoma City Council's adoption of an ordinance that reclassified certain realty. On appeal West Slope contends (1) that the action of the City in rezoning the subject property was arbitrary and capricious; (2) that the appearance of fairness doctrine was violated; (3) that the establishment of a hearing examiner system constituted an unlawful delegation of legislative authority; (4) that contrary to its own ordinances relating to review of proceedings before the hearing examiner, the City Council failed to have before it a transcript of those proceedings, and it failed to enter findings of fact and conclusions of law; and (5) that West Slope was denied its right to an appeal. We find no error, and for the reasons set forth below, the judgment of the trial court is affirmed.

The following facts are pertinent to our review. The subject property, a 56.7–acre tract overlooking Puget Sound just to the south of the Narrows Bridge, was annexed to the City of Tacoma in 1962 and classified as "R–1" One–Family Dwelling District, the most restrictive zoning classification. The land remained undeveloped, and in July of 1973, Les Rowland Construction Company, Inc. (Rowland) applied to have the land rezoned to "R–4–PRD" and "R–5–PRD" Multiple–Family Planned Residential Development Districts. Rowland proposed construction of an apartment and condominium complex consisting of 1,068 living units to be

housed in four 12–story high–rise buildings of 96 units each and forty–three 3–story buildings varying from 6 to 30 units each. On September 16, 1974, after the filing of an Environmental Impact Statement, the Tacoma Planning Commission held a public hearing on Rowland's application, and at that time continued the hearing to enable the planning commissions of Tacoma, Pierce County and Fircrest to conduct a joint study session of the matter.

In February of 1975 Rowland amended its request by eliminating the plans for the high–rise buildings and reducing the total number of units to 713. The amended application proposed dedication to the City of 16.6 acres as permanent open space and 1.4 acres as a street right–of–way; Rowland's request further sought to have 18.3 acres zoned as "R–3–PRD" Multiple–Family Planned Residential Development District and the remaining 20.4 acres classified as "R–4–L–PRD" Low Density Multiple–Family Planned Residential Development District. On March 17, 1975, the Tacoma Planning Commission held a second hearing to consider Rowland's amended request, and at the conclusion of that meeting voted to approve his application. West Slope thereafter moved to have the planning commission reconsider its decision, and on April 21, 1975, the planning commission voted to grant the motion and to refer the matter for a de novo hearing to the hearing examiner, a newly–created position designed to help implement the City's land–use regulatory code.

On May 27, 1975, the hearing examiner commenced taking testimony on behalf of both West Slope and Rowland. After numerous delays and following several days of testimony on matters ranging from transportation and traffic considerations to recreation and utility needs, the hearing examiner entered his written report and recommendation to the City Council in which he recommended approval of Rowland's application, subject to certain specified conditions. After West Slope filed a request for reconsideration, the hearing examiner submitted his supplemental report and again recommended approval. On September 23, 1975,

the City Council passed an ordinance adopting the hearing examiner's recommendation; the matter is now before us after West Slope's subsequent appeal to the Superior Court was denied.

We turn first to West Slope's allegation that the City acted arbitrarily and capriciously. The essence of this assignment appears to be West Slope's contention that the hearing examiner acted in disregard of Tacoma's Land Use Management Plan, and in particular, of the policy requiring that provision be made for the installation of adequate streets and traffic control prior to the development of the land. Initially we note that the Land–Use Management Plan (Plan), which serves as the comprehensive land–use plan of Tacoma, is denoted the official statement of the City's major policies concerning future physical development. The Plan is comprised of "goals," defined as abstract values for which the community is striving, and "policies," which are guidelines that should be followed in order to achieve the stated goals. The Plan further defines "policies" by stating that they are not inflexible rules, but rather are designed to provide guidance in the variety of situations and circumstances to be encountered. By city ordinance, the decision of the hearing examiner is required to be based upon the policies set forth in the Plan. Tacoma ordinance § 13.03.070 (1974).

In the instant case West Slope contends that the City, through its hearing examiner and City Council, violated Policy G under the residential goal of making available sound, healthful housing and a suitable living environment. Policy G provides that

> new or expanded residential development [should be located] where there are adequate streets . . . [which] must exist prior to or be developed concurrent with the intended development.

While the argument of West Slope seems to elevate Policy G to the status of an absolute or inflexible rule, which is precisely what the Plan declares its policies not to be, we do not feel constrained to decide this issue on that basis. Our

examination of the record firmly convinces us that the hearing examiner complied with the traffic considerations contained in Policy G.

To support their argument that existing streets are inadequate to contend with the increased traffic to be generated by the Rowland development, West Slope refers us to the Environmental Impact Statement. That document reports that present traffic counts on South 19th and South 27th Streets, the two routes that would bear the brunt of the increase, are 2,100 and 3,500 vehicles per day respectively, and it further projects that by 1980 those numbers, including the influx from the Rowland project, will have increased to 7,000 and 8,100 each. It is important to note that the projected figures in the Environmental Impact Statement are based upon the original proposal of 1,068 living units and do not account for the subsequent reduction to 713 units. In its evaluation of the effect of the Rowland development, the Environmental Impact Statement states as a general rule that when traffic volume reaches 5,000 cars per day, consideration should be given to increasing an arterial to four lanes. Thus, based upon its projected traffic volumes, the statement concludes that the project will have an adverse impact on the existing transportation network.

The record before the hearing examiner also contains a Department of Planning report, which sets forth additional present and predicted traffic volumes for both South 19th and South 27th Streets, and which includes projected figures for both the original proposal of 1,068 units and the 713-unit development that was ultimately presented in Rowland's application. That report estimated that in 1980 the vehicle counts, including the traffic from a completed 713-unit development, would rise to a daily volume of 5,700 cars on South 19th Street and 6,058 vehicles per day on South 27th Street. In addition the report cited the City Engineering Department data relating the number of traffic lanes required for various levels of vehicular incidence; those standards, which are quoted as being identical with the Urban Arterial Standards for the State of Washington,

provide that consideration should be given to adding a third or left–turn lane when the daily volume reaches 5,000 cars, that when the volume reaches 7,000 vehicles the third lane is necessary and consideration should be given to adding a fourth lane, and that when 10,000 cars traverse the road each day a fourth lane becomes mandatory.

■ When viewed in light of the conflicting traffic projections and standards, the decision of the hearing examiner can hardly be deemed arbitrary and capricious for transgressing the traffic considerations contained in Policy G. In *Carlson v. Bellevue*, 73 Wn.2d 41, 45, 435 P.2d 957 (1968), the court discussed the arbitrary and capricious standard within the context of a zoning decision:

> Zoning is a discretionary exercise of police power by a legislative authority. *Lillions v. Gibbs*, 47 Wn.2d 629, 289 P.2d 203 (1955). Courts will not review, except for manifest abuse, the exercise of legislative discretion. *State ex rel. Smilanich v. McCollum*, 62 Wn.2d 602, 384 P.2d 358 (1963). Manifest abuse of discretion involves arbitrary and capricious conduct. Such conduct is defined to be without consideration and in disregard of the facts. *State ex rel. Lopez–Pacheco v. Jones*, 66 Wn.2d 199, 401 P.2d 841 (1965); *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno*, 61 Wn.2d 461, 378 P.2d 691 (1963). One who asserts that a public authority has abused its discretion and is guilty of arbitrary, capricious, and unreasoning conduct has the burden of proof. *State ex rel. Lopez–Pacheco v. Jones, supra; State ex rel. Longview Fire Fighters Union, Local 828 v. Longview*, 65 Wn.2d 568, 399 P.2d 1 (1965). If the validity of the legislative authority's classification for zoning purposes is fairly debatable, it will be sustained. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 71 L. Ed. 303, 47 Sup. Ct. 114, 54 A.L.R. 1016 (1926). *State ex rel. Myhre v. Spokane*, 70 Wn.2d 207, 422 P.2d 790 (1967) . . .

And in *Washington Ass'n for Retarded Citizens v. Spokane*, 16 Wn. App. 103, 111, 553 P.2d 450 (1976), this court reiterated that

> Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and

upon due consideration, even though it may be believed that an erroneous conclusion has been reached.

*See generally* 1 A. Rathkopf, *The Law of Zoning and Planning* §§ 5.01–5.04 (4th ed. 1975).

In the instant case the hearing examiner's supplemental recommendation, which was adopted by the City Council, approved the 713–unit development subject to several conditions, of which the following relates to traffic matters:

No development on the property shall commence until all traffic matters have been carefully considered and coordinated with the City of Tacoma Traffic Engineering Division and preliminary plans formulated for the development, coordination and control of the traffic in the area, these plans to be submitted at the same time the site plan is submitted for approval. Once this is done, development of the first 200 units may be allowed in order for the Traffic Division to study actual traffic patterns and potential problems. *However, any future development shall be conditioned upon the development being made concurrently with development of the streets in order to accommodate the traffic patterns indicated, if, of course, future development of the streets is required as a result of these initial studies.* South 19th Street is to be maintained in its existing and natural character with the exception of correcting specific problems relating to traffic safety and/or street maintenance. Any major change to be made to 19th Street shall be done only after proper notice and hearing before the Hearings Examiner and the City Council.

(Italics ours.) Not only do we find that the record is devoid of any evidence that the traffic generated by only the first 200 units will, contrary to Policy G, overburden the existing roadways under either standard, but we also note that under the standard and projections provided by the City Planning Department, the traffic from all 713 units would not raise the total vehicle count to a level which would make the construction of additional lanes mandatory. Under this set of circumstances there is clearly room for two opinions, and therefore we agree with the Superior Court's determination that there has been no arbitrary and

capricious action. We further find that West Slope's remaining allegations of arbitrary and capricious action are without merit on their face, and require no further discussion.

West Slope next alleges that the appearance of fairness doctrine was violated by Councilman Warnick's participation in the decision to rezone the subject property. Warnick's potential conflict of interest arises from his ownership of Puget Sound Manufacturing Company, a cabinet building business. In the past, Puget Sound has on occasion been employed to do cabinet work by Crest Builders, a general contractor. Crest in turn has contracted with Rowland, and although in this instance Crest had informally discussed the possibility of building apartments on the subject property, nothing had been finalized at the time of trial. There was further testimony that Crest utilized competitive bidding as the exclusive method for hiring subcontractors.

■ The appearance of fairness doctrine, which has been developed to assure the highest public confidence in the governmental processes which result in zoning changes and land planning measures, is invoked to invalidate a decision when a member of the deciding body has an interest which might have substantially influenced his individual vote even if that interest did not actually affect him. *Narrowsview Preservation Ass'n v. Tacoma,* 84 Wn.2d 416, 526 P.2d 897 (1974). The appropriate test is whether a

> disinterested person, having been apprised of the totality of a board member's personal interest in a matter being acted upon, [would] be reasonably justified in thinking that partiality may exist?

*Swift v. Island County,* 87 Wn.2d 348, 361, 552 P.2d 175 (1976). *See also Buell v. Bremerton,* 80 Wn.2d 518, 495 P.2d 1358 (1972); *see generally* 1 R. Anderson, *American Law of Zoning* §§ 4.18–4.20 (2d ed. 1976); Annot., 10 A.L.R.3d 694 (1966).

It is our opinion that in the absence of a finding of fact to the contrary, any interest of Councilman Warnick's that

would influence his vote is too remote and tenuous to require invocation of the appearance of fairness doctrine. Not only is Warnick's interest several times removed from what could be termed a direct conflict, but of greater importance, any potential advantage to Warnick is dependent upon the occurrence of several contingencies. Specifically, for Warnick to profit from misuse of his position, the rezone must first be granted, next Rowland would have to retain Crest Builders, Crest would then have to solicit bids from cabinet subcontractors, Puget Sound would have to submit a bid, and their bid would have to be the low bid. To void the City Council's action on the basis that such a remote possibility of conflicting interests constitutes a violation of the appearance of fairness doctrine, would be to jeopardize citizen involvement in municipal government, particularly in smaller communities where as a practical matter most of the business community will have dealt with each other at one time or another in the past. We think this case closely resembles the factual pattern in the *Narrowsview* decision, in which the court refused to apply the appearance of fairness doctrine when a former employee of the proponent of a zoning change participated in the zoning decision. That court stated that

> mere acquaintance with, or casual business dealings . . . [with the proponent], would not be of such a nature that we could say, . . . that [the councilman] could not both in fact and appearance be open–minded, objective, impartial and free of entangling influences.

*Narrowsview Preservation Ass'n v. Tacoma, supra* at 421.

West Slope next alleges Tacoma ordinance No. 13.03 *et seq.*, which creates the position of hearing examiner and defines his duties and powers, is an unlawful delegation of legislative authority. *See, e.g., State ex rel. Everett Firefighters, Local 350 v. Johnson,* 46 Wn.2d 114, 278 P.2d 662 (1955); *see generally* 1 K. Davis, *Administrative Law Treatise* §§ 2.01–2.16 (1958). In *State ex rel. Morrison v. Seattle,* 6 Wn. App. 181, 492 P.2d 1078 (1971), we were presented with a similar factual situation, in which the

Seattle City Council delegated the hearings function on certain zoning matters to a planning committee. In response to a challenge to the legality of such delegation we said:

> In these days when massive urban problems must be met by the governing bodies of our large metropolitan cities, delegation of the hearing function to examiners, boards or committees has become a useful and necessary practice in order to handle or expedite the handling of municipal business. It is our view that such practice here does not violate the public hearing requirements of the zoning law, *since the ultimate decision rests with the City Council and not with its planning committee. See In re Puget Sound Pilots Ass'n, 63 Wn.2d 142, 385 P.2d 711 (1963).*
>
> It seems to us that due process of law with its concepts of a fair hearing does not require that such hearing be conducted by the entire body charged with making the determination, so long as that body has available to it the substance of the hearing.

(Italics ours.) *State ex rel. Morrison v. Seattle, supra* at 190–91.

█ We think the rationale expressed by *Morrison* is dispositive of West Slope's contention in the instant case. Tacoma ordinance No. 13.03.070 provides in relevant part that:

> In regard to applications for reclassification of property . . . the Examiner's findings and conclusions shall be in the form of recommendations to the City Council, *which shall have the sole authority to act on such applications* . . .

(Italics ours.) Accordingly we hold that so long as the ultimate decision respecting the zoning change rests with the City Council, it is not illegal to delegate to a hearing examiner the function of taking evidence and making recommendations based thereon.

██ West Slope next contends that the proceedings before the City Council were defective because the testimony taken by the hearing examiner had not been transcribed into a verbatim record. Counsel for West Slope cites

no authority supportive of his contention that a transcript must be made available to the City Council, and therefore the matter need not be considered on appeal. *E.g., Talps v. Arreola,* 83 Wn.2d 655, 521 P.2d 206 (1974). In any event, we have held that due process considerations are satisfied if the City Council has available for its consideration the substance of the hearing. *State ex rel. Morrison v. Seattle, supra* at 191. Here the City Council not only had the exhibits and the hearing examiner's comprehensive summary of the proceedings, but also had available for listening the verbatim tape records of the witnesses. We find no error.

We also find no merit in West Slope's contention that the City Council failed to enter findings of fact and conclusions of law, and that its failure to do so voids the ordinance effectuating the reclassification. Absent a specific requirement to the contrary in the zoning code, a city council is not required to enter findings of fact or conclusions of law when reviewing a hearing examiner's decision. *See State ex rel. Morrison v. Seattle, supra* at 191; *Washington Ass'n for Retarded Citizens v. Spokane, supra* at 109. Tacoma's ordinance requires the City Council to enter such findings and conclusions; however, the ordinance further provides that the Council may adopt all or portions of the hearing examiner's findings and conclusions. Tacoma ordinance No. 13.03.140. We previously referred to Tacoma ordinance No. 13.03.070, which provides in part that the hearing examiner's "findings and conclusions shall be in the form of a recommendation to the City Council"; we are of the opinion that when the City Council adopted the recommendation of the hearing examiner in the instant case, it thereby adopted his findings and conclusions and thus discharged its duty under ordinance No. 13.03.140.

West Slope lastly assigns error to the proceedings before the City Council; the gravamen of this assignment appears to be their contention that the City Council should have held a public hearing at which West Slope could have presented further oral testimony and argument. Unlike *State*

*ex rel. Morrison v. Seattle, supra* at 192, which West Slope cites in support of its contention, the ordinances of Tacoma do not require that the City Council hold a public hearing. To the contrary, Tacoma ordinance No. 13.03.070 states in part that "[t]he hearing by the Examiner, as provided for in Section 13.03.100 hereof shall constitute the hearing by the City Council". It is clear that the Tacoma ordinances do not contemplate a fact–finding hearing in front of the City Council, and for us to read in such a requirement despite the clear declaration otherwise would be to subvert the apparent intent of avoiding a second time–consuming and economically wasteful hearing. Our previous discussion of *State ex rel. Morrison v. Seattle, supra,* also makes it clear that due process considerations do not require that an evidentiary hearing be held before the City Council, so long as the ordinances do not entirely dispense with such a hearing at some stage of the proceedings.

The judgment of the trial court is affirmed.

PETRIE, C.J., and HENRY, J. Pro Tem., concur.

Petition for rehearing denied September 8, 1977.

Review denied by Supreme Court February 17, 1978.