[No. 37321.   Department Two.   May 27, 1965.]

THE STATE OF WASHINGTON, *on the Relation of Edmond Meany Hotel, Inc., Appellant,* v. THE CITY OF SEATTLE *et al., Respondents,* UNIVERSITY DISTRICT PARKING ASSOCIATES, INC., *Intervenor.**

*Reported in 402 P.2d 486.

*Bogle, Bogle & Gates, Frank L. Mechem, Ronald E. Mc-Kinstry,* and *Peter D. Byrnes,* for appellant.

*A. L. Newbould* and *Gordon F. Crandall,* for respondents.

*McCune & Godfrey, C. M. McCune, John A. Godfrey,* and *Virginia B. Lyness,* for intervenor.

WEAVER, J.—Relator, Edmond Meany Hotel, Inc., contracted to sell its 14 story hotel (hereafter designated as "Meany") in the University District of Seattle to Swedish Retirement Home, Vasa, Order of America, Inc. The earnest money receipt and agreement discloses that the purchaser intends to convert the hotel to a "Facility for Retired Senior Citizens." The agreement is contingent upon securing the "approval by the appropriate state, county and municipal authorities for the use of the premises and property as a retirement home for the elderly."

When constructed in 1931 the Meany conformed to the then existing zoning ordinance of the City of Seattle as to both *use* (the purpose for which the building is designed) and *bulk* (the size and location of the building in relation to the lot). The two lower floors, which cover the lot area, contain a lobby, dining and banquet rooms, coffee, barber and tobacco shops, and other commercial businesses. Hotel accommodations are in the tower, which rises from the first two floors, but which covers only a portion of the ground floor building. Since its construction the building has been operated as a commercial hotel, although the record discloses that it has a rather high percentage of "permanent residents."

In 1957 the city adopted the present Seattle Zoning and Platting Code, under the provisions of which the Meany is located in a BC (Community Business) zone. (All citations herein are to this Code.) Under the new ordinance "hotels" and "homes for the retired" are "permitted outright." § 26-.30.020. However, § 26.30.110 limits the *bulk* of buildings in BC zones to 60 feet in height with two exceptions, neither of which is applicable. Thus, under the existing ordinance, the Meany, as a hotel, is conforming as to *use* but noncon-

forming as to *bulk*, for its 14 stories rise more than 60 feet.

Having negotiated the sale to which we have referred, Meany submitted plans and specifications for both interior and exterior modifications of the building and requested a use permit. The proposed exterior modification consists of enclosing the fire escape from the foot of the tower to the top floor of the tower. Eventually, Meany was advised that a variance of the zoning ordinance must be secured. Its request for a variance having been denied by the appropriate municipal authorities, Meany commenced this action for a writ of mandamus directed to the city and its superintendent of buildings directing them

> to issue . . . a use permit without requiring a variance for the conversion of the hotel building to a home for the retired.

At trial, the court granted Meany's motion to strike from its application and affidavit in support of a writ of mandamus reference to a "home for the retired"; and to amend so that the proceeding

> be an application for a use permit to perform the proposed changes without requiring a variance . . . without specifying that it be as a "home for the retired," within the meaning of the ordinance or not.

The University District Parking Associates, Inc., which owns property abutting the property owned or controlled by Meany, was, over objection, permitted to intervene. Meany appeals from a judgment dismissing with prejudice its application for a writ of mandamus.

Fundamentally, this dispute arises from a difference in focus and emphasis. Each party enters the legalistic maze of the zoning ordinance at different places, follows different routes, and arrives at a different enclosure. It is our province to take a bird's-eye view of this labyrinth.

The city and intervenor contend that: (1) the new use of the Meany constitutes it a "home for the retired," not a "hotel"; (2) a building used as a "home for the retired" is a "building or part, residential"; (3) a building put to a "residential use" in a BC zone must meet the yard requirements

of the ordinance; (4) the Meany does not meet the yard requirements of the ordinance; and, therefore, (5) the use permit cannot issue under the zoning ordinance as a matter of law. Basically, Meany urges the negative—(1) (a) the proposed use of Meany is that of a "hotel" rather than a "home for the retired," and (b) a "hotel" is specifically excluded from meeting the yard requirements; *or* (2) even if Meany be a "home for the retired," a "home for the retired" is not a "residential building" and thus need not meet the yard requirements; *or* (3) the Meany has a right to the use permit as a matter of law by virtue of the ordinance which allows a "building nonconforming as to bulk" to make certain alterations.

Since Meany is now in a Community Business Zone, many of the problems of the instant case are governed by chapter 26.30 of Seattle's Zoning Code. We set forth the applicable provisions. (Except where the source is otherwise identified, italicized words are defined in chapter 26.06 of the Code.)

§ 26.30.020 Principal uses permitted outright. The following *Uses*: . . . *Hotels* . . . [and] *Homes for the Retired* . . . .

§ 26.30.010 Required conditions. All *Uses* permitted in this *Zone* shall be subject to the following conditions:
[(a) through (f) not applicable]
(g) *Other required conditions specified in this chapter* . . . (Italics in (g) ours.)

§ 26.30.110 Bulk regulations—Height of buildings. No *Building* shall exceed a height of sixty (60) feet, except . . . [exceptions not applicable].

§ 26.30.120 Bulk regulations—Lot area.
(a) No minimum *Lot Area* requirements for non-residential *Buildings*.
(b) *Lot Area* requirements for *Residential Buildings* or *Residential Parts* shall be as provided in Section 26.24.110.

§26.30.130 Bulk regulations—Required yards. Each *Lot* shall have *Side and Rear Yards* of not less than the depths and widths as follows, except . . . [exception not applicable].

*Front Yards*: None required for non-residential *Buildings*. Ten (10) feet for *Residential Buildings* or *Residential Parts*.

*Side Yards*: None required for non-residential *Buildings*. *Side Yards* for *Residential Buildings* or *Residential Parts* shall be as provided in Section 26.26.100.

*Rear Yard*: None required for non-residential *Buildings*. *Rear Yards* for *Residential Buildings* or *Residential Parts* shall be as provided in Section 26.16.100.

§ 26.30.140  Bulk Regulations—Lot coverage. No *Lot Coverage* limitations for non-residential *Buildings*. *Residential Buildings* or *Residential Parts* shall not occupy more than forty per cent of a *Lot*, except as modified in Sections 26.44.140 [corner lot] and 26.44.150 [accessory building].

In summary, uses permitted outright (as distinguished from uses permitted conditionally) in a BC zone include "hotels" and "homes for the retired," *subject to the conditions* specified in chapter 26.30. Among the conditions specified are four relating to the bulk of buildings. The first —height—applies to *all* buildings. The other three conditions—lot area, lot coverage, and required yards—*do not apply* to nonresidential buildings, but are a requirement for residential buildings and residential parts.

(1) This brings us to the first major question. During the long history surrounding this controversy the proposed use of Meany has been called a "Home for the Elderly," a "retirement home for the elderly," a "home for retired persons" and a "hotel for senior citizens," besides the two uses ("hotel" and "home for the retired") specified in the zoning ordinance. Rather than spring to the conclusion that the potential purchaser's intended use of Meany would make it a "home for the retired" or a "hotel" within the meaning of the zoning ordinance, we summarize the record and examine the definitions set forth in the zoning ordinance.

The chairman of the board of directors of the prospective purchaser testified (and his affidavit is also a matter of

record although a portion of it was stricken at trial) that: (a) the retail shops (on the first and second floors) are to be "left in there in their present operation"; (b) the purchaser

> will offer to provide the dining room and other lobby space for public use provided that satisfactory arrangement can be worked out with the responsible community groups that will guarantee the feasibility of such arrangement for dining room and public meeting areas . . . .

(c) the purchaser's operation of the building will not "cater to transient guests as a hotel would"; (d) an additional dining facility will be provided for those living in the building; (e) an infirmary is to be installed and incidental medical care will be provided for the permanent guests when it becomes necessary; (f) applicants for permanent residence must be 62 years of age, ambulatory, make a substantial initial payment as well as monthly payments. They will then be entitled to life-long accommodations and services as provided.

Turning to the ordinance, we find that § 26.06.090 defines a "hotel" as

> A *Building* in which at least fifty (50) per cent of the gross habitable *Floor Area* is used for sleeping.

Section 26.06.090 defines a "home for the retired" as

> An establishment operated for the purpose of providing domiciliary care for a group of persons who by reason of age are unable to provide such care for themselves and who are not in need of medical or nursing treatment except in the case of temporary illness.

The ordinance must receive a reasonable construction and application in order to serve its general purpose and scope as expressed in § 26.02.020.

> General Purpose and Scope. The general purpose of this Title is to protect and promote public health, safety, morals, and general welfare through a well-considered comprehensive plan for the *Use* of land. . . .
>
> Its provisions are designed to provide adequate light, air, and access, to secure safety from fire and other dangers, and to avoid excessive concentration of population,

in order to lessen traffic congestion, and to facilitate adequate provisions for transportation, water, sewerage, schools, parks, and other public requirements.

In interpretation and application, the provisions of this Title are minimum requirements. § 26.02.020.

We would be more than naive, in view of the testimony and the ordinance definitions, should we conclude that the proposed use of the Meany constitutes it a "hotel" merely because at least 50 per cent of the gross habitable floor area is to be used for sleeping. Meany argues that the persons occupying a "home for the retired" must be *"unable* to provide such [domiciliary] care for themselves" and that the only evidence is that the prospective residents are *able* to provide such care but do not wish to do so. (Italics ours.) In order to give the definition of "home for the retired" a meaning which is consistent with the purposes of the zoning ordinance, we interpret the word "unable" to mean "not desiring but financially capable of" providing such care. Any other interpretation would write out of the ordinance its intended meaning of a "home for the retired."

■ (2) The second problem concerns whether a "home for the retired" is a "building or part, residential." Section 26.06.030 defines a "building or part, residential" as

A *Building* or building part containing solely one or more *Dwelling Units* or a *Building* or building part occupied or intended to be occupied in whole for sleeping or living purposes, including *Hospitals, Sanitariums* and similar uses, but not including *Motels* or *Hotels.* [The terms italicized are specifically defined in the ordinance.]

As we have previously pointed out, the yard requirements apply only to "residential buildings or parts"; the requirements are not applicable to nonresidential buildings. § 26-.30.130. We must set forth one more definition. Section 26.06.050 defines "dwelling unit" as

A room or suite of two or more rooms that is designed for and not occupied by more than one *Family* doing its own cooking therein and having only one kitchen facility, located within a *Building.*

By working backward through the definitions it is possible to conclude that the contemplated use of Meany would not be a "building or part, residential." To illustrate—before there can be a "dwelling unit" as defined above, there must be a "room or suite of rooms that is designated for and not occupied by more than one *Family* doing its own cooking and having only one kitchen facility . . ." Since there would be no kitchen facilities for each room or suite of rooms in the contemplated use of Meany, then such room or suite of rooms can not be a "dwelling unit" within the meaning of the zoning ordinance. If there be no "dwelling unit," there can be no "building or building part containing solely one or more dwelling units," and thus no "building or part, residential."

However, Meany overlooks the fact that the ordinance is written in the disjunctive. A "building or part, residential" is also defined as a "building *part* occupied or intended to be occupied in whole for sleeping or living purposes . . ." (Italics ours.) Certainly the contemplated use of Meany envisions a "building part . . . to be occupied in whole for sleeping or living purposes."

Although not controlling, we believe it significant that the definition of "building or part, residential" does not exclude a "home for the retired" as it excludes "motels" and "hotels." This fortifies our conclusion that it is the intent of the ordinance that a "home for the retired" is a "building or part, residential."

(3) The third step is that a building put to a "residential use" must meet certain yard requirements of the ordinance. See § 26.30.130, quoted *supra.*

(4) All parties to this action concede that Meany does not meet the yard requirements for a "residential building or part" specified in § 26.30.130.

(5) Therefore, as a matter of law, Meany is not entitled to a use permit.

Despite the above analysis, Meany contends that it has a right to change uses by virtue of § 26.10.030 and § 26.10.040. As we have previously pointed out, Meany, *as a hotel,* is a

building conforming as to use but is now nonconforming as to bulk because of its height.

Section 26.10.030 provides:

> Nonconforming uses and buildings—Continuing existing use. Any *Nonconforming Building* or *Use* may be continued, subject, however, to provisions of Sections 26.10-.040 through 26.10.060.

Thus there can be no doubt that Meany may continue its use as a "hotel."

Section 26.10.040 provides:

> Nonconforming uses and buildings—Nonconforming as to bulk. Any *Building* conforming as to *Use* but which is a *Building Nonconforming as to Bulk* as of the effective date of this title may be altered, repaired or extended, provided that such alteration, repair or extension does not cause such *Building* to further exceed the bulk provisions of this title.

'We agree that the requested interior and exterior modifications do "not cause such Building to *further* exceed the bulk provisions" of the ordinance; hence, *as a hotel*, Meany would be entitled to a use permit to modify the building.

From these two sections, Meany springs to the conclusion that

> even if the proposed operation is classified as a *Home for the Retired* rather than a *Hotel*, Appellant [Meany] has an affirmative right under the Ordinance to make such use of its property.

■ We do not agree. We adopt the succinct reasoning of the trial judge set forth in his memorandum opinion:

> This building is a nonconforming building because it is too high. Under the law, it could not be rebuilt without a variance. Construing all the provisions of the zoning code together, it seems to me it is quite apparent that just because a building is nonconforming as to height does not give it any greater rights than a conforming building would have . . . . If this hotel were a proper height, it could not change its use to a use that would make it nonconforming. . . . .
> Section 26.10.040 of the zoning code (commonly called the grandfather clause) only allows nonconforming buildings to be changed as to their construction under certain

conditions. *This section does not undertake to allow a change of use.* (Italics ours.)

In view of our conclusion that the trial court must be affirmed for the reasons stated, we do not discuss the assignments of error directed to the court's findings of fact and conclusions of law based upon the Seattle Building Code.

The judgment is affirmed.

HILL, DONWORTH, OTT, and HAMILTON, JJ., concur.