[No. 39052.    Department One.    April 3, 1969.]

DONALD J. DANDO et al., *Respondents,* v. KING COUNTY et al., *Appellants.*[*]

*Derrill T. Bastian, Koenigsberg, Brown & Sinsheimer,* by *L. M. Koenigsberg,* and *Dobson, Houser & Dobson,* by *David C. Dobson,* for appellants.

[*]Reported in 452 P.2d 955.

FINLEY, J.—Respondents are the owners of a dwelling house in the vicinity of the intersection of Ambaum Boulevard, Normandy Road and Des Moines Way in southern King County. Appellant Malone is the owner of a tract of 5⅓ acres, which fronts on the intersection. The eastern portion of this tract forms the south boundary of respondents' land. Appellant co-partners are lessees under a lease from Malone, and intended to operate a golf driving range on the tract. The Malone tract was zoned "L.F.R. 8.4," indicating that it was restricted to single-family residences on a minimum lot size and frontage restriction and was additionally subject to height restrictions because of its proximity to an airfield.

Malone applied to the King County Planning Commission for rezoning of the property to "L.F.S.-1," a broader use designation. The rezoning was approved on October 28, 1965, after having again been referred to the planning commission and again having been reported favorably. Meanwhile, Malone had applied to the King County Board of Adjustment for a conditional use permit and variance.[1] These were granted to him on June 15, 1965.

Respondents obtained a writ of certiorari in the superior court to review the action of the board of adjustment. The court decreed the conditional use permit and the variance void, and this appeal followed. Respondents have filed no brief, and the case is deemed submitted on its merits as to them. ROA 41(4).

Appellants' assignments of error deal with the construction of the phrase "golf, polo, swimming, tennis, yacht and country clubs" in section 13.02(1) of King County Resolution 18801. That section establishes the permitted conditional uses in an S-1 district. Appellants contend that golf

---

[1] The variance was necessitated by the "L.F." restriction. Rigid height controls are established by that restriction. Respondent had challenged the power of the board of adjustment to grant that variance. As in our view of the matter other considerations are dispositive of this appeal, we do not reach that question.

is an activity, and that that activity is permitted as a conditional use.[2]

Appellants additionally contend that the trial court erred in refusing to consider the prior legislative history of resolution 18801, the zoning code in effect as to the property.

This legislative history was first offered on a motion to amend the return to the writ and reconsider the decision. The trial court took the view that the legislative history as offered was analogous to newly discovered evidence, that counsel had not been diligent, and accordingly denied the motion. Perhaps counsel should have brought the series of prior zoning resolutions to the attention of the court at an earlier point in the proceedings. In any event, we have noticed and given appropriate consideration to these prior resolutions of the board of county commissioners on this appeal.

Quite simply stated, appellants' argument proves both too little and too much. It proves too little because "club" has been defined so as to exclude services customarily conducted as a business since 1937. King County Resolution 6494. Appellants' tour de force of statutory construction proves no more than that resolution 16426, adopted in 1956, eliminated a long-standing redundancy in the suburban use district regulations, which until that date had banned business and commercial uses explicitly, as well as by implication from the use of the word "club."

The argument proves too much because it requires this court to presuppose some sort of a fictitious legislative intent running in a continuous course through the zoning legislation of the county from 1937 to the present. If we found such an intent, it would also require us to read resolution 18801 in the light of the substantive provisions of the new zoning code, resolution 25789. Such a reading would be fatal to appellants' arguments that golf is a single activity.

---

[2]The trial court construed the phrase as though the word "club" followed each of the first five words. Thus the phrase would only permit noncommercial (club) use associated with the listed sports. The court found that the purpose of the zoning code was to regulate land use, and that golf was not a land use.

*See e.g.,* King County Code §§ 24.44.030, 24.40.020, 24.08-.020(9), 24.18.020(1).

■ Appellants seek to persuade us that King County, having banned their intended land use from 1937 to 1956 in the zoning classification provided for land in transition from rural to suburban residential uses, consciously altered the 1956 resolution to permit their use, and then in the 1964 enactment re-excluded the use from part of the corresponding zone unconditionally, and from part conditionally. *See* King County Code 24.44.030(3). The crux of appellants' argument from this most inconclusive legislative history is the rule of construction that legislatures are presumed to be familiar with their own prior legislation, and that where material changes are made in the wording of a statute in a reenactment a change in the legislative intent must be presumed. *In re Bale,* 63 Wn.2d 83, 385 P.2d 545 (1963). Application of that rule would presuppose that the change in wording made in these reenactments was material. We find no such material change in the mere elimination of redundancy enacted by resolution 16426.[3]

■ Zoning codes must be reasonably construed in order to effectuate the purposes for which they are adopted. *State ex rel. Edmond Meany Hotel, Inc. v. Seattle,* 66 Wn.2d 329, 402 P.2d 486 (1965). The statement of purpose of resolution 18801 is several paragraphs in length. That statement may be adequately summarized by stating that the

---

[3]Resolution 18801 defines "club" as "[a]n association of persons for some common purpose but not including groups organized primarily to render a service which is customarily carried on as a business."

Resolution 6494 uses the same definition, as do the intervening reenactments.

From 1937 to 1956 the section of the code in question and its predecessors read: "Golf, polo, swimming, tennis, yacht and country clubs *but not including any sport, recreation or amusement enterprises operated as a business, or for commercial purposes,* . . . ." (Enterprises in singular after 1946) The italicized language was omitted in the reenactment by resolution 16426 in 1956. King County Resolution 6494, § 10 (1937); King County Resolution 10197 (1946); King County Resolution 11373, § 7 (1949) (changed "or" to "nor"); King County Resolution 16426, § 13.02 (1956).

resolution is an exercise of the police power for the purpose of achieving an orderly, planned use of land and regulating future growth and development. King County Resolution 18801, § 1(B). The resolution establishes 24 "use classifications" ranging from "Residential Single Family District (R-6)" to "Airports (LF)" and also creates a general classification "R-A" for the purpose of protecting unclassified land from disorderly business or commercial development. King County Resolution 18801, §§ 3.01-.02. It appears that the general purpose of the code is to regulate land use.

Appellants' ingenious argument that the code also regulates activities, and that "golf" is such an activity, however, conducted, strains the imagination a bit too much. While it is true that the provisions of the code governing certain business and commercial uses, King County Resolution 18801, §§ 17, 19-20, describes uses by specific reference to the commercial service or manufacturing activity carried on upon the land, such linguistic inadvertence should not blind us to the expressed purpose of the zoning code.

The uses authorized in an S-1 zone, insofar as they depart from residential use, and with the exception of the conditional use appellants seek to invoke and a conditional use authorizing automobile driving schools, may be concisely described as rural. To visualize appellants' proposed golf driving range located among other conditional uses allowed in S-1 (mink farms, personal swineries and goat dairies, country and yacht clubs, and automobile driving schools) is to entertain grave doubts that "golf" is, for zoning code purposes, an activity.[4]

Such doubts are increased by the definition accorded to "club," which excludes groups organized to render a service customarily carried on as a business. King County Resolution 18801, § 2.04. "Golf" could be either commercial or noncommercial, which would be anomalous in view

[4]No such incongruity is encountered as to the activities listed in sections 17, 19 and 20 of resolution 18801, assuming that they are "activities."

of the above-mentioned rural nature of the permitted commercial uses.

The construction adopted by the trial court, which suppresses these doubts by allowing only the noncommercial golf club in an S-1 zone, avoids the unlikely, strained or absurd consequences which could result from a literal reading.

■ Assuming appellants' grammatical contentions arguendo, the rule that the spirit or intent of legislation should prevail over express but inept language requires a statute to be construed as a whole in ascertaining the legislative purpose and effect of a single section. *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 382 P.2d 639 (1963). Provisions have been made in the zoning code for commercial recreation areas in other use districts. King County Resolution 18801, §§ 16.01, 17.01, 18.01, 19.01, 20.01. It appears that such areas[5] would comprehend the land uses desired by appellants.

■ A reasonable and unforced construction of the zoning code would therefore support the trial court's decision. A reasonable construction of the plain language and intent of an ordinance is to be favored. *Cf. Boss v. Spokane*, 63 Wn.2d 305, 387 P.2d 67 (1963) (vehicle parked overtime repeatedly not obstruction to traffic for purposes of impoundment).

The judgment is affirmed.

HUNTER, C. J., WEAVER, HAMILTON, and McGOVERN, JJ., concur.

---

[5]Recreational areas, commercial, are defined as "[a]n area including facilities and equipment for recreational purposes, swimming pools, tennis courts, playgrounds and other similar uses operated for a profit, either private or open to the public on payment of a fee." King County Resolution 18801, § 2.19.