[No. 42129. En Banc. January 27, 1972.]

LUCILE BARTZ, *Respondent*, v. THE BOARD OF ADJUSTMENT *et al.*, *Petitioners*.

*Donald C. Brockett, Prosecuting Attorney,* and *Emmett J. Shearer, Deputy,* for petitioner Board of Adjustment.

*Cooney & Cooney, Joseph M. Cooney, John L. Cooney, Cummings & Durkan,* by *Martin J. Durkan,* and *Edward E. Shaw,* for petitioner Spalding.

*McKanna, Herman & Herman* and *Howard H. Herman,* for respondent.

HUNTER, J.—In this case Lucile Bartz, plaintiff (respondent), appealed to the Court of Appeals, Division 3, from a judgment of the Superior Court for Spokane County, affirming an order of the board of adjustment of that county,

granting a permit to the defendant (petitioner), Dolph Spalding, to construct a building to house a disassembling operation of automobiles in his wrecking yard. The Court of Appeals, Division 3, in *Bartz v. Board of Adjustment*, 5 Wn. App. 497, 487 P.2d 782 (1971), reversed the judgment of the trial court. The defendant, Dolph Spalding, petitioned this court for a review of the decision of the Court of Appeals, which we granted. The same issues raised in the Court of Appeals are raised in this court.

The defendant, Dolph Spalding, is the owner of Spalding's Wrecking Yard located in Spokane Valley. The defendant started his wrecking yard business in 1935, in the city of Spokane. In 1940, he acquired property in the Spokane Valley where he commenced storing automobiles. He eventually built his home on the property and moved his entire operation to this location. In 1942, the defendant's property and the surrounding area was zoned "agricultural" under the zoning ordinance of Spokane County. The defendant's wrecking yard thereupon became a nonconforming use.

The wrecking yard of the defendant presently covers an area of approximately 29 acres. In addition to his home, there is also on the premises a private garage 43 by 30 feet, a shop and office building 60 by 120 feet, and a warehouse building 50 by 128 feet.

The building which Mr. Spalding proposes to construct for his car disassembling operations, under his permit, in the furtherance of his wrecking business, will be a 70 by 120 foot steel building which will be located in the vicinity of the other buildings on the wrecking yard premises.

Application for the permit was made to the zoning adjuster of Spokane County in 1969. Lucile Bartz, whose residence is located on property adjoining the wrecking yard, learning that the permit had been granted, timely petitioned for a writ of certiorari for review before the superior court. Since the zoning adjuster kept no record of the proceed-

ings, upon stipulation of the parties, the matter was referred to the Board of Adjustment to be heard as an appeal to that board from the zoning adjuster's order granting the building permit.

The hearing was held on March 30, 1970. Testimony was introduced by the defendant, and in behalf of the plaintiff, Mrs. Bartz (a widow), by her attorney. It was the contention of Mrs. Bartz that the zoning adjuster was without jurisdiction to grant the permit. The Board of Adjustment entered its findings and affirmed the order of the zoning adjuster, the pertinent part of which is as follows:

FINDINGS:

1) That the applicant proposes to erect a building, seventy feet (70') by one hundred twenty feet (120') upon property owned by him, said building to be used in conjunction with an auto wrecking yard business conducted upon the property.

2) That the proposed site of the building is upon property established as an "Agricultural" Zone April 24, 1942, and that prior to that date the property was zoned "Unclassified," which classification allowed at that time an auto wrecking yard as a permitted use.

3) That the applicant commenced, and has continued, an auto wrecking yard business upon property containing the site of the proposed building prior to April 24, 1942, and consequently the use of the property containing the proposed building site is a "non-conforming" use within the meaning of the Spokane County Zoning Ordinance.

4) That pursuant to Section 4.18.030 and Chapter 4.25 of the Spokane County Zoning Ordinance the Spokane County Zoning Adjustor did on November 28, 1969, after hearing held April 21, 1969 approve a special permit for the extension of the non-conforming wrecking yard use by the erection of a building thereon.

5) That, pursuant to the above-cited ordinance, this Board did on March 30, 1970, hold a public hearing for the purpose of reviewing the decision of the Zoning Adjustor; to consider evidence and testimony in favor of and opposed to the granting of the application; and to determine whether or not said application should be approved.

6) That three owners constituting a major portion of the property adjoining the applicant's property have signified by petition that they do not oppose the erection of the proposed building and in fact that they consider such building to be an "upgrading" of the wrecking yard.

7) That the use of the building as proposed by the applicant can, and in all probability will, have the effect of maintaining the wrecking yard in a more orderly, efficient manner and appearance.

8) Whatever the effect of the wrecking yard itself upon properties in this vicinity, we do not find that the erection and use of this building will increase any detrimental effects; to the contrary we are of the opinion and do find that the erection and use of the building as proposed will tend to diminish any detrimental effects upon surrounding properties.

9) It is alleged by objectors that the applicant has in the past illegally extended his yard. If that be true, there are appropriate remedies available to the objectors. We do not consider these allegations as appropriate or sufficient grounds for denying the present application.

10) We find that the erection and use of the building as proposed and in the location proposed poses no threat to the public health, safety, convenience and general welfare.

ORDER OF THE BOARD:

Now, THEREFORE, The Board of Adjustment of Spokane County does hereby approve the application of Dolph Spalding to erect a building upon property described below and to use said building in conjunction with and as a part of his wrecking yard business.

Upon appeal to the superior court, that court approved the findings of the Board of Adjustment and affirmed its order granting the building permit to the defendant, Dolph Spalding.

The plaintiff's appeal to the Court of Appeals followed and the case is before us pursuant to our granting the defendant's petition for review of the Court of Appeal's decision reversing the trial court and revoking the building permit.

The plaintiff's primary contention on appeal from the

order of the superior court is that the decision of the Board of Adjustment was in excess of the board's authority.

■ The plaintiff argues that the Board of Adjustment, under the Planning Enabling Act, RCW 36.70, *et seq.*, has no authority to consider applications for other than conditional uses or variances. RCW 36.70.810 provides:

The board of adjustment, subject to appropriate conditions and safeguards as provided by the zoning ordinance or the ordinance establishing the board of adjustment, if there be such, shall hear and decide:

(1) Applications for conditional uses or other permits when the zoning ordinance sets forth the specific uses to be made subject to conditional use permits and establishes criteria for determining the conditions to be imposed;

(2) Application for variances from the terms of the zoning ordinance: *Provided,* That any variance granted shall be subject to such conditions as will assure that the adjustment thereby authorized shall not constitute a grant of special privilege inconsistent with the limitations upon other properties in the vicinity and zone in which subject property is situated, and that the following circumstances are found to apply;

We agree that no authority for the Board of Adjustment to consider nonconforming uses is lodged in this section of the act.

However, it is clear that an area of regulation essential to the use of property not covered by the Planning Enabling Act, must be implemented by ordinance. This is what the Spokane County commissioners have done by the enactment of the zoning ordinance of Spokane County in the area of nonconforming uses, deriving their authority to zone under prior enactments, RCW 36.32.120 and RCW 35.63, *et seq.*

In instances where a nonconforming use came into existence by reason of a reclassification of property under the zoning ordinance, no permit is required for a continuation of that use. Zoning ordinance of Spokane County, 4.18.010, so provides:

*Continuance of nonconforming use—When permitted.* The lawful use of the land or premises existing at the time of the adoption of this title, although such use does not conform to the provision of this title, may be continued, but if such nonconforming use is abandoned for a period of one year, or more, any further use of such lands or premises shall be in conformity with the provisions of this Title. The mere presence of a structure shall not be deemed to constitute the continuance of a nonconforming use unless such structure is actually occupied and employed in maintaining such use.

No permit was required for the restoration of a building under a nonconforming use in certain instances. Zoning ordinance of Spokane County, 4.18.020, provides:

*Restoration of nonconforming use—When permitted.* Nothing in this title shall be deemed to prohibit the restoration of a building within a period of six months from the date of its destruction by fire, explosion, act of God, or act of the public enemy provided, however, that the setback and yard requirements of the zone shall be adhered to whether or not they were in conformance prior to destruction of the building.

However, in the instance when it was deemed necessary for a permit to be required for a nonconforming use, authority for the consideration of such an application was delegated to the board of adjustment and the zoning adjuster.[1] Zoning ordinance of Spokane County, 4.18.030, provides:

*Extension of nonconforming use—Permit required.* The board of adjustment, in accordance with the provisions of Chapter 4.25 [of this title] may grant a permit for the extension of a nonconforming use throughout any building or land under single ownership at the effective date of this title, occupied or partially occupied by such use at the time of passage of this title.

The pertinent provision in chapter 4.25.030, referred to in

---

[1]The zoning adjuster has the same power and duties as the board of adjustment, except the board of adjustment has the additional authority to hear appeals from the order of the zoning adjuster. See S.Z.O. 4.25.010 and 4.25.060-.070-.080.

zoning ordinance 4.18.030 of Spokane County, is as follows:

> *Authority of board.* The Board of Adjustment, subject to appropriate conditions and safeguards as provided by this Title, shall hear and decide:

> . . .

> (g) Special permits—Fence, expansion of a nonconforming use. Applications for a fence or expansion of a nonconforming use from the terms of the zoning ordinance, provided, that such special permit shall be subject to such conditions as will assure that the public health, safety, convenience, and general welfare are protected.

It is to be noted that one section of the ordinance uses the term "extension of a nonconforming use," and the other "expansion of a nonconforming use." We find no distinction in the meaning of the terms.

▇ The plaintiff argues that this extension of a nonconforming use is a legislative function, and that the ordinances are in derogation of the seventh amendment to the state constitution since there are insufficient legislative standards or criteria for the exercise of this authority. We disagree. The ordinances must be considered *in pari materia.* The issuance of the permit must be "subject to such conditions as will assure that the public health, safety, convenience, and general welfare are protected." This, considered in light of the purposes and objectives of the zoning ordinance of Spokane County, 4.20.010, clearly constitutes adequate standards. *See Fox v. Adams,* 134 N.Y.S.2d 534 (Sup. Ct. 1954); *Holy Sepulchre Cemetery v. Greece,* 191 Misc. 241, 79 N.Y.S.2d 683 (1947), *aff'd,* 273 App. Div. 942, 79 N.Y.S.2d 863 (1948); *McCord v. Ed Bond & Condon Co.,* 175 Ga. 667, 165 S.E. 590, 86 A.L.R. 703 (1932). The ordinances meet the test of constitutional validity.

We hold the board of adjustment had the jurisdiction to consider the application of the defendant, Dolph Spalding, for an extension of his nonconforming use.

The plaintiff further argues that the board of adjustment exceeded its authority in granting the defendant's application for an extension of a nonconforming use—that to permit the construction of this permanent steel building in the

operation of his wrecking yard is contrary to the established policy of phasing out a nonconforming use under the zoning regulations.

 We agree that phasing out a nonconforming use, insofar as this can be done without violating constitutional rights of due process, is the desirable policy of zoning legislation. However, it must be remembered that the enactment of comprehensive zoning ordinances in their inception, as desirable as they may be in promoting the health and general welfare of the public, being permissive and not mandatory, are within the discretion of the legislative body of the city or county.

By the same token, the severity of limitations within constitutional due process standards, in the phasing out of a nonconforming use, are within the discretion of the legislative body. In the recent case of *State ex rel. Smilanich v. McCollum*, 62 Wn.2d 602, 607, 384 P.2d 358 (1963), we stated:

> The general rule of law is that the purposes of zoning ordinances are served by phasing out nonconforming uses and that resolutions of boards of county commissioners and rules of planning commissions which refuse to enlarge nonconforming uses will be sustained by the courts. . . . But there is nothing in this zoning code which prohibits the enlarging of a nonconforming use in which there is no building involved, except such as provided in § 8(b), paragraph one, of the code, . . .

In the instant case we find no prohibition in the Spokane zoning ordinance against the extension or expansion of a nonconforming use. This is clearly within the board's exercise of discretion, subject to the guidelines contained in zoning ordinance of Spokane County 4.25.030(g), *supra*.

It is argued that the board of adjustment cannot deviate from the definition of an auto wrecking yard, as it contains no provision for buildings. Zoning ordinance of Spokane County 4.03.020(9), provides:

> *Auto Wrecking Yard, Junk Yard*: "Auto wrecking yard, junk yard" is an open area where waste, used, or secondhand materials are bought, sold, exchanged,

stored, baled, packed, disassembled, or handled, including but not limited to scrap iron and other metals, paper, rags, rubber tires, and bottles. A "junk yard" includes an auto wrecking yard, *but does not include uses established entirely within an enclosed building.*

(Italics ours.)

■ We do not so construe this definition of a wrecking yard. The ordinance must be read in its entirety. The last sentence of the ordinance contemplates the existence of a building in a wrecking yard. A contrary construction would be unrealistic. Under such a construction, even a structure for an office or garage, or for storage facilities, would not be permissible.

The defendant argues that the board is bound by standards for a wrecking yard as set forth in zoning ordinance of Spokane County 4.24.060, which makes no provision for a building:

*Auto wrecking and junk yard.* (a) Zone permitted: Agricultural, manufacturing, unclassified.

(b) Conditional standards:

(1) A sight obscuring fence must be constructed and inspected prior to the issuance of a certificate of occupancy for use of the yard.

(2) The fence shall be a minimum of six feet in height.

(3) No automobile or parts thereof, junk, or salvage materials or parts thereof shall be visible from any public right-of-way. All materials or parts shall be located within the fenced area.

(4) Minimum lot area: One acre.

(5) The fence shall be of a single solid color.

(6) A performance bond shall be required to assure compliance with the provisions of this permit.

(7) The permit shall be granted for a period not to exceed two years and at the end of such period an inspection shall be made of the premises to determine the advisability of renewing such permit.

These are standards that are required as a condition precedent to the issuance of a conditional use permit for the operation of a wrecking yard in an agricultural area under

chapter 4.24, conditional uses, and are unrelated to a lawfully established nonconforming use in an agricultural area for which no permit is required. It is apparent from the language of the ordinance that the primary object of zoning ordinance of Spokane County 4.24.060, is to obscure unsightliness of the wrecking yard. The board of adjustment in the instant case found the unsightliness would be improved by granting the permit.

The board of adjustment, after a consideration of the testimony, found, as heretofore recited:

7) That the use of the building as proposed by the applicant can, and in all probability will, have the effect of maintaining the wrecking yard in a more orderly, efficient manner and appearance.

8) Whatever the effect of the wrecking yard itself upon the properties in this vicinity, we do not find that the erection and use of this building will increase any detrimental effects; to the contrary we are of the opinion and do find that the erection and use of the building as proposed will tend to diminish *any detrimental effects upon surrounding properties*.

. . .

10) We find that the erection and use of the building as proposed and in the location proposed poses no threat to the public health, safety, convenience and general welfare.

(Italics ours.)

The trial court found the record supported these findings and approved the granting of the permit.

Our examination of the record shows substantial testimony to support the determinations of the board of adjustment.

Mr. Spalding's son, Max, in business with his father, testified they would have a cleaner and more efficient operation:

We wanted some way of processing our merchandise faster, cleaner and end up with a better product and, at the end, at the same time we felt we could run a neater, cleaner yard this way.

The record further shows:

MR. COONEY: Now then, would you be able then to dispose of that car body as soon as you processed it through this building? MAX SPALDING: Well, after we get everything we need off a car body, there is no need in us keeping it any longer. Now we can't say that we are going to move all of them out of there when this starts up, but we can say a percentage of these will never land in our yard. They will go through this building and probably be loaded from there onto a truck and down to a shredder. We won't even have to put them in the yard, but we have to now. MR. COONEY: So in other words it is a little bit of a revolutionary concept in this sense as that it isn't that at least it will minimize the number of cars that will have to be laying around waiting for you to take a part off of. You will strip the car and send it on its way to the shredder and keep this surplus then from building up. MAX SPALDING: This is correct.

Mr. William Wagstaff, a mechanical engineer for 12 years, who designed the proposed building, testified as follows, under examination of Mr. Cooney:

MR. COONEY: And do you confine your activities to just Spokane, or do you have other jobs in other places? MR. WAGSTAFF: We have in connection with my business, we have jobs in 35 of the 48 states, plus 5 foreign countries. MR. COONEY: And you worked with Mr. Spalding in formulating the plans and design, etc. on this building? MR. WAGSTAFF: Yes, for the past 2½ or 3 years. . . . I firmly believe that by putting in an auto disassembly such as has been proposed, that they will be able to not only handle the automobiles in a more proficient manner than they have presently got out there but the salvage material that is brought in will be handled in a more proficient manner; and I believe that all in all it will in turn provide them with better housekeeping. It will provide them with a product that is ready to go to their shredder at a lower cost and thereby all the way around it will be of benefit to every citizen in the form of—as Max mentioned they are not able to burn their automobiles at the present time. They will be able to bring their automobile into this disassembly room, take the upholstery out under ideal conditions, ideal conditions of heat and lights, etc. like this that men like to work in and they will be able to prepare this automobile for the shredder at a much lower cost. For as today with the wrecking

: yards in the country, this is not being done and the result is that, of course, we have very unsightly wrecking yards. I believe that all in all it is going to improve the situation from every standpoint. MR. COONEY: Now you refer to the shredder that is the end of the line for the car. Is that correct? It is when you can run it through this building, strip it and off to the shredder then so far as the people in Spokane is where we are talking about. Then that is the end of the automobile. That is the burial of the automobile. MR. WAGSTAFF: That is correct.

This record amply supports the findings of the board of adjustment to the effect that the use of the proposed building would constitute an improvement in the operation of the wrecking yard to the public interest.

The plaintiff contends she was denied a fair hearing. We disagree. This was an administrative hearing conducted by laymen who are not charged with the strict rules of procedure required in a judicial proceeding. The plaintiff failed to testify; however her attorney, who represented her at the hearing, testified and engaged in lengthy colloquy. The record shows that all persons for and against the granting of the permit were invited to be heard. The following appears in the record:

MR. BIENZ [chairman of the board]: . . . Mr. Herman, in order to be completely fair now, do you have anything further to say? MR. HERMAN [plaintiff's attorney]: No, I think I have nothing further to say. If the tape has been running all of this time, I will be satisfied with what I have said so far.

The plaintiff further contends that the action of the board was arbitrary and capricious in its failure to consider her contention that the defendant had previously violated his nonconforming use by increasing the acreage of his wrecking yard. The board held, in finding No. 9, *supra*, that if this be true, there are appropriate remedies available to the objectors, and that this was not appropriate or sufficient grounds for denial of the application for the permit. We believe this was a correct ruling by the board. This was not a proper forum for the hearing and determination of charges of past violations.

222

We have considered the other contentions of irregularities by the board and find them to be without merit.

The decision of the Court of Appeals is reversed and the trial court is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HALE, NEILL, STAFFORD, and WRIGHT, JJ., concur.

Petition for rehearing denied March 27, 1972.