[No. 6341–1.   Division One.   April 26, 1979.]

KEITH WIGGERS, ET AL, *Appellants,* v. THE COUNTY OF SKAGIT, ET AL, *Respondents.*

*Bell, Ingram & Rice, P.S.C.,* and *Lewis A. Bell,* for appellants.

*Patrick R. McMullen, Prosecuting Attorney, Tom Moser, Deputy, Preston, Thorgrimson, Ellis, Holman & Fletcher,* and *Robert L. Gunter,* for respondents.

SWANSON, A.C.J.—Keith Wiggers, Herbert Sargo and the Skagit River League (hereafter Wiggers and Sargo) appeal from a Superior Court judgment quashing a writ of certiorari which had been issued to review the action of the Skagit County commissioners in approving a planned unit residential development.

In quashing the writ of certiorari, the trial court entered the following findings of fact and conclusions of law:

1.

Intervenor defendants . . . on behalf of themselves and VALLEYS WEST, a limited partnership, filed an application for a Planned Unit Residential Development (PURD) with Skagit County on November 5, 1975.

2.

Thereafter, six public hearings were held before the Planning Commission, who recommended to the County Commissioners that they approve the PURD subject to certain conditions. That approval was granted by the

Skagit County Commissioners, Defendants herein, on May 25, 1976.

3.

The project consists of approximately 220 acres located on the South side of the Skagit River, 2 miles West of Concrete. The project consists of some 20 divisions which include approximately 265 residential sites, 120 individually owned campsites, some 50 acres of open space and 6 acres devoted to related commercial and condominium developments.

4.

The property in question is not entirely contiguous but has three distinct portions which are connected by unimproved county road easements over state land . . . The intervening state land is subject to casual recreational uses.

5.

Counting each individual campsite as an individual dwelling unit like the other residential sites, the density of the development is 2.3 dwelling units per acre which is less than one–half of the maximum allowable. No density bonus was requested by Intervenor Defendants or approved by the County.

9.

Both the Interim Zoning Ordinance and the Comprehensive Plan for Skagit County provide for residential zoning in this area.

10.

The PURD Ordinance No. 4081 includes the following statement as its Declaration of Purpose: "The purpose of the P.U.R.D. classification is to provide for flexibility and diversification in development and to provide guidelines for developments consisting of a variety of uses which are not covered by other sections of this ordinance and/or other ordinances."

11.

The PURD Ordinance No. 4081 provides for: "A creative approach to the use of land and related physical development, offering a maximum choice in the types of environment and living units . . ." (Par. 6.01) and may be used for a variety of types of housing and accessory uses including commercial land uses. (Par. 6.02(3) and Par. 6.09).

12.

The basic intent of the legislative body of the county enacting the PURD Ordinance was to provide for flexibility and diversification in developments. By their approval of the project, the Defendants SKAGIT COUNTY COMMISSIONERS determined that the development was consistent with the legislative intent both as to its noncontiguous nature and as to the inclusion of individually owned campsites.

Based upon these findings, the trial court entered the following conclusions of law:

3.

The proper standard of review of the decision of the County Commissioners in this zoning controversy is that known as the "arbitrary and capricious" standard.

5.

The purpose of PURD is to ensure harmonious self–contained developments incorporating a variety of uses, types of environments and living units. That purpose is of greater consideration than a strict adherence and construction of the word "tract" contained in the ordinance.

6.

The action of the County Commissioners in approving the project was made after due deliberation with full regard to the facts of the case.

Wiggers and Sargo assign as error the entry of finding of fact No. 12, conclusion of law No. 5 and the court's conclusion that the writ of certiorari should be quashed. These assignments raise the issues of whether a planned unit residential development under Amendment No. 5162 to Skagit County Ordinance No. 4081 may be developed on parcels of land that are noncontiguous, and whether individually owned campsites are permitted.

In adopting zoning amendment No. 5162, the Skagit County commissioners stated in the "declaration of purpose" that:

The purpose of the P.U.R.D. classification is to provide for flexibility and diversification in development and to provide guidelines for developments consisting of a variety of uses which are not covered by other sections of this ordinance and/or other ordinances.

In utilizing the P.U.R.D. concept, the developer will be required to provide far more consideration to planning, overall design, open space and recreation areas, engineering, architectural and landscape design, and other factors consistent with good land use development.

Section 6.02 of the ordinance states:

(1) The P.U.R.D. may be developed on *a tract of land* in single ownership, multiple ownership, or otherwise subject to supervisory lease management authority or ownership control as may be necessary to carry out the provisions of this section.

(2) The development shall consist of a harmonious selection of uses and groupings of buildings, service, parking area, circulation and open spaces, planned and designed as an integrated unit in such a manner as to constitute a safe, efficient and convenient P.U.R.D. Emphasis will be on positive good design, harmony of the P.U.R.D. with the existing and proposed character of its surroundings, with emphasis and due consideration given to air, water and soil pollution, flood protection, aesthetics and conformance with the policies, goals, and objectives of the Comprehensive Plan.

(3) A P.U.R.D. may be located in any zone which permits residential uses on a gross minimum 10 acre parcel of land, or such smaller parcel of land which could not be efficiently or economically developed using normal subdividing procedures, but which could be utilized as identified in 6.01(1), (2), (3) above. Such development may consist of a variety of types of housing and accessory uses. P.U.R.D.'s consisting of a substantial number of dwelling units, may also include *commercial land uses*, subject to provisions as provided in 6.09 Commercial Land Use within a P.U.R.D.

(Italics ours.)

Wiggers and Sargo contend that under this ordinance, (1) a "tract of land" was intended to mean parcels of land which are contiguous, and (2) individually owned campsites are not permitted in a planned unit residential development. They argue that approving a planned unit residential development on the three noncontiguous parcels of land in this case and permitting campsites was contrary to the zoning ordinance. We disagree.

■■ Zoning ordinances should be given a reasonable construction and application in order to serve their purpose and scope. *State ex rel. Edmond Meany Hotel, Inc. v. Seattle,* 66 Wn.2d 329, 402 P.2d 486 (1965). Zoning ordinances are to be construed as a whole and any unreasonable construction must be rejected. *Bartz v. Board of Adjustment,* 80 Wn.2d 209, 492 P.2d 1374 (1972).

> [Z]oning ordinances should be liberally construed to accomplish their plain purpose and intent. At the same time the court bears in mind that they are in derogation of the common–law right to use property so as to realize its highest utility and should not be extended by implication to cases not clearly within the scope of the purpose and intent manifest in their language.

*State ex rel. Standard Min. & Dev. Corp. v. Auburn,* 82 Wn.2d 321, 326, 510 P.2d 647 (1973). *See Dando v. King County,* 75 Wn.2d 598, 452 P.2d 955 (1969). The primary objective in interpreting a zoning ordinance is to ascertain the legislative intent. *East v. King County,* 22 Wn. App. 247, 589 P.2d 805 (1978). Undefined words in an ordinance will be given their plain and ordinary meaning, *East v. King County, supra, State v. Work,* 75 Wn.2d 204, 449 P.2d 806 (1969), and singular terms used in a zoning ordinance include the plural unless the context in which the terms are used indicates to the contrary. 8 E. McQuillin, *Law of Municipal Corporations* § 25.71 (3d ed. rev. 1976).

■ In applying these aids to interpretation, we hold that under the unique circumstances of this case, the term "a tract of land," as used in section 6.02(1), is broad enough to include noncontiguous parcels of property. Although the term "tract," as used in deeds and tax statutes, often connotes contiguity, *see e.g.,* RCW 84.04.130, *Saulsberry v. Maddix,* 125 F.2d 430 (6th Cir. 1942), the term is broadly defined in *Webster's Third New Int'l Dictionary* (1969) as "an area either large or small: as . . . (1): a region or stretch (as of land) that is [usually] indefinitely described or without precise boundaries . . ." *See Normal v. Harter,* 5 Ill. App. 3d 363, 283 N.E.2d 44 (1972); *Lakewood Homes,*

*Inc. v. Board of Adjustment,* 23 Ohio Misc. 211, 258 N.E.2d 470 (1970), *aff'd in part, rev'd in part,* 25 Ohio App. 2d 125, 267 N.E.2d 595 (1971). In *Oxley v. Linnton Plywood Ass'n,* 205 Ore. 78, 99–100, 284 P.2d 766, 776 (1955), the court stated:

> The usual signification of the word "tract", *as applied to land,* is contiguity of the parcels of property, but that is not always true. In *Provine v. Thornton,* 92 Miss 395, 401, 46 So 950, the court said: "In our view the *lands* involved in this litigation comprised only a single tract, and they therefore should have been sold as if they lay contiguously. We are satisfied that, within the purview of the law, the fact that eighty acres of the property were separated from the main body of the land in the conveyance did not make that eighty acres a separate tract." (Italics ours.)

We conclude that the term "tract" is broad enough to include noncontiguous parcels and, in any event, the singular term "tract" may be interpreted to include the plural.

■ The construction of the term "tract" to include noncontiguous parcels is consistent with the flexible purpose of the zoning classification of the planned unit residential development. This classification has been described as

> a more flexible approach to the creation of residential communities than the traditional treatment of zoning districts on an individual lot basis, in that this zoning technique enables the development of entire tracts of land containing many lots.

Annot., 43 A.L.R.3d 888, 890 (1972). *See generally Symposium—Planned Unit Development,* 114 U. Pa. L. Rev. 3 (1965); 82 Am. Jur. 2d *Zoning and Planning* § 106 (1976); 2 R. Anderson, *American Law of Zoning* § 11.14 (2d ed. 1976). In *Lutz v. Longview,* 83 Wn.2d 566, 568, 520 P.2d 1374 (1974), the court reviewed the nature of a planned unit development:

> Traditional zoning has had the virtue of certainty and the handicap of rigidity. A designated zone authorized certain uses, and no others, absent a variance. While a rezone into a more permissive class might accommodate a desirable use, it might also allow an undesirable one. In

short, the zoning authority was unable to tailor a specific desirable development to a particular tract of land if it involved uses which might cut across a number of zone classifications—unless the tract were rezoned to accommodate the most liberal element. In contrast, the PUD achieves flexibility by permitting specific modifications of the customary zoning standards as applied to a particular parcel. The developer is not given carte blanche authority to make any use which would be permitted under traditional zoning. D. Mandelker, *The Zoning Dilemma* (1971).

In *Frankland v. Lake Oswego,* 267 Ore. 452, 517 P.2d 1042, 1047 (1973), the objectives of a planned unit development were stated to be:

(1) to achieve flexibility; (2) to provide a more desirable living environment than would be possible through the strict application of zoning ordinance requirements; (3) to encourage developers to use a more creative approach in their development of land; (4) to encourage a more efficient and more desirable use of open land; and (5) to encourage variety in the physical development pattern . . .

■■ The county commissioners, as in other zoning matters, are vested with wide discretion in determining whether to permit a planned unit residential development.

Zoning is a discretionary exercise of police power by a legislative authority. *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955). Courts will not review, except for manifest abuse, the exercise of legislative discretion. *State ex rel. Smilanich v. McCollum,* 62 Wn.2d 602, 384 P.2d 358 (1963). Manifest abuse of discretion involves arbitrary and capricious conduct. Such conduct is defined to be without consideration and in disregard of the facts. *State ex rel. Lopez–Pacheco v. Jones,* 66 Wn.2d 199, 401 P.2d 841 (1965); *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno,* 61 Wn.2d 461, 378 P.2d 691 (1963). One who asserts that a public authority has abused its discretion and is guilty of arbitrary, capricious, and unreasoning conduct has the burden of proof. *State ex rel. Lopez–Pacheco v. Jones, supra; State ex rel. Longview Fire Fighters Union, Local 828 v. Longview,* 65 Wn.2d 568,

399 P.2d 1 (1965). If the validity of the legislative authority's classification for zoning purposes is fairly debatable, it will be sustained. *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 71 L. Ed. 303, 47 Sup. Ct. 114, 54 A.L.R. 1016 (1926). *State ex rel. Myhre v. Spokane,* 70 Wn.2d 207, 422 P.2d 790 (1967) . . .

*West Slope Community Council v. Tacoma,* 18 Wn. App. 328, 333, 569 P.2d 1183 (1977), quoting *Carlson v. Bellevue,* 73 Wn.2d 41, 45, 435 P.2d 957 (1968). We note, however, that the discretion of the county commissioners is not unlimited. The legal effect of approving a planned unit residential development by the county commissioners is an act of rezoning, which, in certain circumstances, may constitute spot zoning. *Lutz v. Longview, supra.*

> Spot zoning has come to mean arbitrary and unreasonable zoning action by which a smaller area is singled out of a larger area or district and specially zoned for a use classification totally different from and inconsistent with the classification of surrounding land, and not in accordance with the comprehensive plan. Spot zoning is a zoning for private gain designed to favor or benefit a particular individual or group and not the welfare of the community as a whole. *See* C. Rhyne, *Municipal Law* § 32-3, at 825 (1957). The vice of a spot zone is its inevitable effect of granting a discriminatory benefit to one or a group of owners and to the detriment of their neighbors or the community without adequate public advantage or justification. *Thomas v. Town of Bedford,* 11 N.Y.2d 428, 184 N.E.2d 285 (1962). Zoning merely for the benefit of one or a few, or for the disadvantage of some and with no substantial relationship to the public health, safety, general welfare or morals, in conflict with either the comprehensive zoning plan or ordinance is arbitrary and capricious and unlawful. *Eckes v. Board of Zoning Appeals of Baltimore Cy.,* 209 Md. 432, 121 A.2d 249 (1956).

*Lutz v. Longview, supra* at 573–74 quoting *Smith v. Skagit County,* 75 Wn.2d 715, 743–44, 453 P.2d 832 (1969). *See Sonneland v. Spokane,* 4 Wn. App. 865, 484 P.2d 421 (1971); *Save a Valuable Environment v. Bothell,* 89 Wn.2d

216 862, 576 P.2d 401 (1978). Among the factors that a court should consider in determining whether governmental action is spot zoning are: the benefit or detriment to the owner, benefit or detriment to the public, size of the area reclassified, and the character of the adjacent land. *See generally* 1 R. Anderson, *American Law of Zoning* §§ 5.08–5.12 (2d ed. 1976). The court should also determine whether the action was arbitrary and capricious, which has been defined as:

being willful and unreasoning action, without consideration and in disregard of facts or circumstances, . . . [W]here there is room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration, even though it may be otherwise felt that a different conclusion might be reached.

*Bishop v. Houghton,* 69 Wn.2d 786, 794, 420 P.2d 368 (1966); *Sonneland v. Spokane, supra* at 872. An additional factor which may also be considered in light of our holding that a tract of land may consist of noncontiguous parcels is whether the parcels are reasonably contiguous. Permitting a planned unit residential development on a tract of land consisting of parcels that are not reasonably contiguous would in most instances be spot zoning because the zoning action would be totally inconsistent with the classification of the surrounding land and would bear no reasonable relationship to the welfare of the community. *See generally* 2 R. Anderson, *American Law of Zoning* § 11.21 (2d ed. 1976).

Here, the property which was classified as a planned unit residential development is approximately 220 acres located on the south side of the Skagit River approximately 2 miles west of the town of Concrete. The property consists of three noncontiguous parcels of land in close proximity bordering on the Skagit River and connected by unimproved county road easements over state land. The intervening state land is subject to casual recreational uses. Thus, the parcels, although not technically contiguous, are closely related and can be considered reasonably contiguous and,

therefore, treated as one tract. The question of whether the three parcels was a "tract of land" under the ordinance was fully considered by the Skagit County commissioners, and the trial court found that their decision was made after due deliberation and with full regard of the facts of the case and was not arbitrary and capricious. In considering that the three parcels are so closely related that they can be treated as contiguous, we find that the county commissioners did not abuse their discretion in permitting the planned unit residential development. We emphasize, however, that absent such a showing of contiguity, the action would be subject to challenge as spot zoning.

We also hold that individually owned campsites are permissible uses in a planned unit residential development. The zoning classification of a planned unit residential development is clearly intended to provide flexibility and to cover a variety of harmonious uses: "Such development may consist of a variety of types of housing and accessory uses." PURD ordinance No. 4081 § 6.02(3). Campsites can be considered "accessory uses."

Affirmed.

FARRIS and ANDERSEN, JJ., concur.