[No. 6727–3–I. Division One. December 24, 1979.]

THE STATE OF WASHINGTON, *on the Relation of Catholic Family & Children's Services, Appellant,* v. THE CITY OF BELLINGHAM, ET AL, *Respondents.*

*Ernest A. Bentley,* for appellant.

*Charles A. Shaw, Assistant City Attorney,* and *David A. Nichols,* for respondents.

RINGOLD, J.—This is an appeal from a decision of the City of Bellingham Board of Adjustment (Board) denying a conditional use permit for a children's residence facility to the Catholic Family and Children's Services (CFCS). We hold that the Board erred in requiring a conditional use permit and reverse.

In letters written October 8, 1974, and February 28, 1975, to the Bellingham planning director, CFCS outlined the anticipated program of a proposed children's residence facility to be located in a Residential Low Density One (RL–1) use district under the Bellingham zoning code.

Believing that the facility would be licensed as a foster home, the planning director determined that it would therefore be a permitted use as a "single family house" in the proposed location. CFCS obtained the necessary building permits and the facility was constructed and occupied.

On January 5, 1976, CFCS obtained a group home license to operate the facility from the State Department of Social and Health Services (DSHS). CFCS chose to obtain that license, rather than a foster home license for which the facility also qualified, due to the different types of state funding available.

Some time later, a group of neighbors motivated by instances of misbehavior by the children residing at the CFCS facility sought an inquiry into its status. A hearing before the Board was held at which CFCS and the neighborhood group outlined their positions. The Board declared the facility to be a juvenile home requiring a conditional use permit under the zoning code. The Board made no findings of fact or conclusions of law, but based its decision on the desire to have some control over the facility and give the neighbors some recourse against it through the conditional use permit process.

The CFCS applied for a conditional use permit, which the Board denied. The CFCS appealed by writ of certiorari to the superior court. The court concluded that the type of DSHS license obtained was the determinative factor in distinguishing between single family houses with foster children and juvenile homes under the Bellingham zoning code and affirmed the Board's denial. The CFCS then brought this appeal.

 The fundamental principles governing the construction of zoning ordinances were stated in *Wiggers v. Skagit County,* 23 Wn. App. 207, 212, 596 P.2d 1345 (1979):

Zoning ordinances should be given a reasonable construction and application in order to serve their purpose and scope. *State ex rel. Edmond Meany Hotel, Inc. v.*

*Seattle,* 66 Wn.2d 329, 402 P.2d 486 (1965). Zoning ordinances are to be construed as a whole and any unreasonable construction must be rejected. *Bartz v. Board of Adjustment,* 80 Wn.2d 209, 492 P.2d 1374 (1972).

> [Z]oning ordinances should be liberally construed to accomplish their plain purpose and intent. At the same time the court bears in mind that they are in derogation of the common–law right to use property so as to realize its highest utility and should not be extended by implication to cases not clearly within the scope of the purpose and intent manifest in their language.

*State ex rel. Standard Min. & Dev. Corp. v. Auburn,* 82 Wn.2d 321, 326, 510 P.2d 647 (1973). *See Dando v. King County,* 75 Wn.2d 598, 452 P.2d 955 (1969). The primary objective in interpreting a zoning ordinance is to ascertain the legislative intent. *East v. King County,* 22 Wn. App. 247, 589 P.2d 805 (1978). Undefined words in an ordinance will be given their plain and ordinary meaning, *East v. King County, supra, State v. Work,* 75 Wn.2d 204, 449 P.2d 806 (1969).

With the foregoing principles in mind we turn to the ultimate question here, which we must determine as a matter of law; that is, whether the use to which CFCS put the property is permitted by the Bellingham zoning code. *Mercer Island v. Kaltenbach,* 60 Wn.2d 105, 371 P.2d 1009 (1962); *Mercer Island v. Steinmann,* 9 Wn. App. 479, 513 P.2d 80 (1973). In our view, both the Board and the trial court erroneously relied on matters other than the *use* to which the property was being put in deciding that a conditional use permit was required. Neither the desire of others to have some control over the CFCS property nor the type of DSHS license obtained affected the actual use of the property which, so far as the record shows, has remained unchanged from its first occupancy by CFCS.

The Bellingham zoning code lists "single family house" as a permitted use and "juvenile homes" as a conditional use in an RL–1 use district. Bellingham Municipal Code § 20.06.102(b)(1), § 20.06.102(d)(10). The latter use requires a special permit. Bellingham Municipal Code § 20.06.040.

The zoning code defines "juvenile home" as "an establishment located in a residential–type building and used as a supervised group home for juveniles under the age of 18 years." Bellingham Municipal Code § 20.06.047. The code does not define "single family house," but "family" is defined as

> one or more persons each related to the other by blood, marriage, or adoption living together in a single dwelling unit. A "family" may include foster children, domestic servants and no more than two guests residing within the dwelling unit.

Bellingham Municipal Code § 20.06.011. The term "foster children" is also undefined, but under the general dictionary definition, to which we may refer in ascertaining the common meaning of statutory language, *Garrison v. State Nursing Bd.*, 87 Wn.2d 195, 550 P.2d 7 (1976), "foster" children are those "receiving, or sharing nourishment, upbringing, or parental care though not related by blood or legal ties." *Webster's Third New International Dictionary* (1969). *See also In re Norman's Estate*, 209 Minn. 19, 295 N.W. 63 (1940).

It appears from the record that the CFCS facility is a residential–type building used as a home for juveniles under the age of 18 years who are supervised by a live–in married couple, among others.[1] It therefore fits the zoning code's definition of a juvenile home. Bellingham Municipal Code § 20.06.047. It further appears that the children residing at the CFCS house receive and share nourishment,

---

[1] It is undisputed that the building architecturally is a single family residence. It is owned by a private party and leased by Catholic Family & Children's Services (CFCS) to operate its program. CFCS hires a married couple to serve as houseparents. They are employed full time to live there and function as surrogate parents, although they take time off periodically. There have been three sets of houseparents in the facility's 3 years of operation; the incumbents have been there approximately 2 years.

The facility has up to six children at any one time, ranging in age from 6 to 14 years. The average length of stay is 6 to 12 months. They are children who have been unable to function adequately in school for emotional reasons and receive tutoring at the home, as well as treatment from a social worker and family therapist.

upbringing and parental care. They are therefore foster children and, with the married couple residing there, constitute a family for purposes of the zoning code. Bellingham Municipal Code § 20.06.011. The facility thus qualifies under the zoning code as a single family house as well.

In resolving the problem thus presented, the zoning code must be construed so that each part is given effect with every other part; each provision must be considered in relation to the others and, if possible, harmoniously construed. *See Publishers Forest Prods. Co. v. State,* 81 Wn.2d 814, 505 P.2d 453 (1973). Although the definitions of "juvenile home" and "single family house" overlap in this instance, they are not coextensive. The distinguishing factor between single family houses with foster children and juvenile homes under the Bellingham zoning code is the existence of a family residing in the dwelling unit. In making this distinction under the code's definition of "family," the status of the adult residents is determinative. A relationship between the adult residents "by blood, marriage, or adoption," is required for such a residence to be a single family house. Bellingham Municipal Code § 20.06.011. Where the adult residents have no such relationship, a facility offering care and supervision for children is within the definition of juvenile home only. The married couple and the children at the CFCS house constitute a family under the terms of the zoning code and the Board therefore erred in requiring a conditional use permit.

Reversed.

JAMES, J., concurs.

ANDERSEN, J. (concurring)—Since the home was being used for a purpose authorized by the city's zoning code, a conditional use permit was not required. *See Culp v. Seattle,* 22 Wn. App. 618, 590 P.2d 1288 (1979). I therefore concur.

Reconsideration denied January 22, 1980.

Review denied by Supreme Court March 21, 1980.